A03A1511. IN RE ESTATE OF CHAMBERS.
(583 SE2d 565)

PHIPPS, Judge.

The Attorney General of the State of Georgia, acting as parens patriae, filed a motion in the Probate Court of Brooks County to set aside an order of the probate court granting letters of dismission to the executor of an estate. The Attorney General also applied for an order requiring the executor to appear and submit to a settlement of accounts. The probate court granted the motion and application. On appeal by the executor, the Superior Court of Brooks County granted the Attorney General's motion for summary judgment. The executor appeals to this court, challenging the standing of the Attorney General to institute this proceeding and the jurisdiction of the probate court over it. Resolving these issues adversely to the executor, we affirm.

Robert Warde Chambers died in September 1989, without lineal descendants but in possession of an estate consisting of cash, real estate, and stock valued at approximately $631,606.59. Chambers had named his friend John R. Horton as executor of his will. In Items Three and Four of his will, Chambers made specific bequests of cash in the cumulative amount of $120,000 to a number of individuals and charitable and nonprofit organizations, including a total of $20,000 to Horton and his family.

In Item Five of his will, Chambers bequeathed the rest, residue, and remainder of his estate "for charitable purposes to an organization or organizations," as described in various sections of the Internal Revenue Code,

which organization or organizations shall be selected by my Executor in his discretion, giving due consideration to my suggestions herein made, each of which charities selected by him shall be an organization or organizations described as aforesaid. I suggest to my Executor that he give every consideration to scholarships for young people at a college or colleges, vocational school or schools, or other educational institutions, to scholarship for ministerial students at a seminary or seminaries of the United Methodist Church, the mission or missions work of the United Methodist Church, and the organizations or the work of the organizations named in Item Four of this Will aforesaid.

Chambers directed the executor to make said selections in writing, give notice thereof to the organization or organizations selected, and file a copy of such selection in the probate court within six months after probate of the will and qualification of the executor.

Item Seven relieved the executor from making or filing any annual or other returns or reports to the court. But Item Eight provided,

> Although I have relieved my Executor of making returns of any type to any court, I do direct that he file in the Probate Court where my will is probated a copy of his selection or selections of the charities chosen by him to receive bequests under this Will and the amount of said bequests and the terms of said bequests at least annually. I further direct that he shall make an initial inventory of the property of my estate and file the same in the Probate Court where my will is probated.

In 1989, the Probate Court of Brooks County admitted Chambers' will to probate in common form and then in solemn form, and letters testamentary were issued accordingly. From 1989 until 1996, Horton distributed substantial amounts of stock from Chambers' estate to himself. In 1996, in his capacity as executor, he executed four deeds conveying all of the estate's real property to himself and his wife. Horton then applied for discharge as executor stating under oath that, under the will, he had fully discharged all of his duties and was relieved from filing returns with the court. In reliance on the contents of the application, the Probate Court of Brooks County entered an order in 1997 issuing letters of dismission to Horton without an examination of accounts.

In 1998, the probate court judge learned that Horton had not filed an inventory of the Chambers estate as required by the will and directed him to inventory the estate. Horton responded by filing a document showing that between 1990 and 1996 he had made charitable distributions from the estate totaling about $50,000. He filed another document generally identifying various organizations to which, and purposes for which, other charitable distributions could be made from the estate.

In 2000, the Attorney General instituted this proceeding complaining that Horton had procured letters of dismission from the probate court by fraud. In his initial pleadings, the Attorney General asserted that although no charitable trust has been created under the will, the executor has been entrusted with property of indefinite charitable beneficiaries and is in a general sense a trustee. Horton filed objections to the Attorney General's motion and application

arguing, among other things, that he has no standing because of his admission that no charitable trust has been created. The Attorney General thereupon amended his pleadings to assert that although the words "trust" or "trustee" do not appear in Item Five of the will, a charitable trust is nonetheless created. The probate court overruled Horton's objections. In granting the Attorney General's motion and application, the probate court noted that Horton had taken the stand in the hearing before the probate court and repeatedly invoked his Fifth Amendment privilege against self-incrimination in response to questions concerning his administration of the estate. In superior court, Horton reasserted his claims of lack of standing by the Attorney General and lack of jurisdiction by the probate court. By interlocutory order, the superior court ruled adversely to Horton on these claims.

1. Horton first contends that the Attorney General lacks standing in this action because Chambers' will provides for the making of charitable bequests rather than the establishment or creation of a charitable trust.

> In all cases in which the rights of beneficiaries under a charitable trust are involved, the Attorney General or the district attorney of the circuit in which the major portion of trust res lies shall represent the interests of the beneficiaries and the interests of this state as parens patriae in all legal matters pertaining to the administration and disposition of such trust.[1]

A will may contain a charitable bequest without creating a charitable trust,[2] but a trust may be express or implied.[3] "An express trust shall be created or declared in writing. An express trust shall have each of the following elements, ascertainable with reasonable certainty: (1) An intention by a settlor to create a trust; (2) Trust property; (3) A beneficiary; (4) A trustee; and (5) Active duties imposed on the trustee, which duties may be specified in the writing or implied by law."[4] "A charitable trust is one in which the settlor provides that the trust property shall be used for charitable purposes."[5] "The authorities agree that no particular form of words or conduct is necessary to show the intent to create a charitable trust [and] that one

---

[1] OCGA § 53-12-115.

[2] See *Roughton v. Jones*, 225 Ga. 774, 776 (2) (171 SE2d 536) (1969).

[3] *Ga. Farm &c. Ins. Co. v. Smith*, 179 Ga. App. 399, 401 (1) (346 SE2d 848) (1986).

[4] *Hayes v. Clark*, 242 Ga. App. 411, 412 (1) (530 SE2d 38) (2000), citing OCGA § 53-12-20 (a) and (b).

[5] OCGA § 53-12-111.

may be created without using the words 'trust' or 'trustee.' . . . [Cits.]"[6]

Even though Chambers did not use the words "trust" or "trustee" in his will, he effectively created a charitable trust in Item Five by bequeathing the bulk of his estate to charitable organizations meeting certain requirements and imposing active duties on the executor in regard to the selection of specific charities. As in *Roughton v. Jones*,[7] all elements of an express trust were thus established.

There is no merit in Horton's argument that the Attorney General was bound by his initial pleading in probate court and thus estopped from contradicting his judicial admission that no express trust was created. The rule as to admissions in judicio does not apply to legal conclusions but only to statements of fact.[8]

2. Horton argues that the grant of summary judgment to the Attorney General was not authorized because there are disputed issues of fact as to whether the will requires the executor to file any returns or reports; whether the issuance of letters of dismission without an examination of accounts constituted a breach of duty by the executor, as opposed to an error by the probate court; and whether the Attorney General was entitled to notice of the entering of letters of dismission. We find no merit in this argument.

Items Seven and Eight of the will, viewed together, clearly show that Horton was required to report his selection or selections of charities to the probate court. Without question, the probate court issued letters of dismission to Horton without an examination of accounts in reliance on misrepresentations by him in his application for discharge. These are the material facts, and they are not in dispute. Therefore, summary judgment was authorized.

3. Horton contends that the superior court erred in ruling adversely to him on his jurisdictional claim.

According to Horton, the probate court lacked jurisdiction because this case involves the establishment of an implied charitable trust requiring the exercise of equitable powers vested in superior court.[9] We disagree.

> [A]n implied trust is either a resulting trust or a constructive trust. An implied resulting trust can arise under

---

[6] *Miller v. Alderhold*, 228 Ga. 65, 70 (184 SE2d 172) (1971) (Grice, J., concurring specially); see *Collins v. Collins*, 231 Ga. 683, 684 (3) (a) (203 SE2d 524) (1974) (a trust shall never fail for want of a trustee, in that a court of equity has jurisdiction and power to appoint a trustee for trust property and decree title in him).

[7] Supra.

[8] *Mountain Bound v. Alliant FoodService*, 242 Ga. App. 557, 558 (2) (530 SE2d 272) (2000).

[9] See *McDowell v. McDowell*, 194 Ga. 88, 92-93 (20 SE2d 602) (1942).

three circumstances: (1) an express trust is created but fails for any reason; (2) a trust is fully performed without exhausting all of the trust property; and (3) a purchase money resulting trust is established.[10]

"OCGA § 53-12-93 defines a constructive trust as 'a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.' "[11] Clearly, no implied resulting or constructive trust exists here. In legal contemplation, Chambers' will created an express trust even though the words "trust" and "trustee" were not used.

Unquestionably, the probate court had jurisdiction to set aside its own order granting the executor letters of dismission on the ground that such order had been procured by fraud[12] and to order the executor to appear for a settlement of accounts.[13] In so doing, the court applied clear provisions of the will and did not impinge upon the exclusive authority of the superior court to construe the will.[14]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 17, 2003.

*Walters & Pujadas, C. Vinson Walters II, Thomas E. Pujadas*, for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, Grace E. Lewis, Assistant Attorney General*, for appellee.

---

[10] *Edwards v. Edwards*, 267 Ga. 780, 781 (1) (482 SE2d 701) (1997), citing OCGA §§ 53-12-90 and 53-12-91.

[11] Id. at 781 (2).

[12] See *Hampton v. Taylor*, 233 Ga. 63, 65 (209 SE2d 634) (1974); OCGA §§ 9-11-60 (b), (d) (2); 53-7-53.

[13] OCGA §§ 53-7-55 (3); 53-7-62 (a); see *Cannon v. Bangs*, 269 Ga. 671, 672 (502 SE2d 224) (1998).

[14] See *McDowell v. McDowell*, supra.