## S09A0159. CASWELL v. CASWELL et al.
### (675 SE2d 19)

THOMPSON, Justice.

In this will contest, caveatrix Roxanna Caswell appeals from a jury verdict and judgment entered in favor of the propounder of the last will and testament of testator Nathan H. Caswell. The issues on appeal involve evidentiary rulings of the trial court and the grant of a partial directed verdict. Finding no error, we affirm.

Caveatrix was married to testator at the time of his death. In early March 2005, shortly after being diagnosed with renal cancer, testator executed a general power-of-attorney in favor of caveatrix. On March 26, 2005 he signed and published his last will and testament, naming his brother appellee Albert Glenn Caswell as executor, and revoking all previous wills. Simultaneously, testator executed a financial power-of-attorney in favor of executor as well as financial and healthcare powers-of-attorney in favor of Natalie Caswell, testator's daughter from a previous marriage. The following month, testator expressly in writing revoked the power-of-attorney given to caveatrix.

Testator died on August 28, 2005. Executor petitioned to probate the last will and testament in solemn form. Caveatrix challenged the will on grounds of undue influence and lack of testamentary capacity. She also disputed the validity of an in terrorem clause contained in the will.[1] After a hearing, the probate court ruled in favor of executor and admitted the will to probate. Caveatrix appealed to the superior court pursuant to OCGA § 5-3-2 (a). She also filed a declaratory judgment action against executor, Natalie Caswell, and a landfill company owned by testator known as 81 Inert & Disposal, Inc. ("81 Inert").[2] In that action, caveatrix sought a ruling that she is the sole shareholder and officer of 81 Inert and has control of its assets. Executor answered and counterclaimed seeking in part to set aside ten warranty deeds that caveatrix had signed shortly before testator's death allegedly using her revoked power-of-attorney to transfer testator's sole ownership in these properties to herself individually or to herself and testator as joint tenants; a declaration that caveatrix fraudulently transferred stock in 81 Inert to herself using the revoked power-of-attorney; and a declaration that the in terrorem clause is valid and that caveatrix violated that provision in the probate proceedings. The declaratory judgment action and the de novo appeal from probate court were consolidated and were heard by

---

[1] See OCGA § 53-4-68 (b).

[2] The defendants in that action are the appellees to this appeal.

a jury.[3] At the conclusion of the evidence, the trial court directed a verdict in defendants' favor in the declaratory judgment action setting aside nine deeds on the basis that they had been executed by caveatrix using her power-of-attorney after it had been revoked.[4] The jury returned a verdict in favor of defendants on the remaining claims, finding that the will is valid, that caveatrix had fraudulently transferred all outstanding shares in 81 Inert to herself, and that 81 Inert is owned by testator's estate. The trial court entered judgment in accordance with OCGA § 9-11-54 (b), and this appeal followed.

1. Caveatrix asserts that the trial court erred in preventing her from presenting evidence which would support a finding of undue influence or lack of testamentary capacity. In this regard, she submits that the court abused its discretion in refusing to allow her to cross-examine executor as to the effect of the in terrorem clause, arguing that the provision was inconsistent with testator's intent to provide generously for her and thus demonstrated a lack of testamentary capacity or a finding of undue influence.

The undisputed evidence established that testator, an experienced businessman, met with his attorney and financial planner for the purpose of drawing a will. Testator discussed the intended disposition of his property and his desire to minimize taxes after his death. In accordance with testator's stated intent that caveatrix be provided for comfortably for the remainder of her life, the attorney recommended the creation of a qualified terminable interest in property (QTIP) trust which would provide caveatrix with interest on assets of $7.5 million for life. In addition, testator stated his intent to bequeath the marital home to her along with a separate bequest of $500,000. He also stated his desire to create a trust to benefit his daughter, Natalie Caswell, and to bequeath separate monetary gifts to his stepchildren, the biological children of caveatrix. The attorney testified that he explained the effect of each proposed provision to testator paragraph by paragraph, and how each would achieve testator's stated goals. The attorney was confident that testator was competent to express his testamentary intent, and that he understood the intended disposition of his property.

After the will was prepared, testator met with two certified financial planners who had been managing his assets, for the purpose of signing the document. Initially, his financial planners assessed testator's competency and satisfied themselves that he was fully cognizant of the circumstances. They then reviewed each

---

[3] The trial court reserved the legal issue of the validity of the in terrorem provision and its effect on caveatrix for resolution after trial. That issue remains pending below.

[4] The tenth deed had been set aside previously on summary judgment.

provision of the will with him; testator was "attentive" and "responsive" to the discussion and understood the consequences of his testamentary plan. Testator signed and published the will in the presence of those two witnesses and a notary public. Natalie Caswell and executor were also in attendance. The will was admitted into evidence at trial without redaction so the jury was aware of the existence and stated effect of the in terrorem provision.

" 'Testamentary capacity exists when the testator has a decided and rational desire as to the disposition of property.' OCGA § 53-4-11 (a)." *Lillard v. Owens*, 281 Ga. 619, 620 (1) (641 SE2d 511) (2007). " 'A will is not valid if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator.' OCGA § 53-4-12." *Lillard*, supra at 621. The uncontroverted testimony of those who witnessed the discussion as to the disposition of testator's property and those who were present when the will was signed and published shows that testator was of sound mind and that he expressed a rational desire to dispose of his property which was not influenced by the desires of others. The attorney and financial planners confirm that the will was prepared in accordance with testator's knowing intent and that he approved each provision contained therein. We do not perceive how further evidence as to the effect of the forfeiture provision would have been inconsistent with testator's testamentary plan or probative of undue influence or the absence of testamentary capacity. "Absent clear abuse, the trial court's exercise of discretion in admitting or refusing to admit evidence is entitled to deference. [Cit.]" *Morrison v. Morrison*, 282 Ga. 866, 867 (2) (655 SE2d 571) (2008). No such abuse of discretion has been shown here.

2. Caveatrix asserts that the trial court erred in directing a partial verdict against her and setting aside the deeds.

Under OCGA § 9-11-50 (a), a motion for directed verdict will be granted "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." A directed verdict is improperly granted if there is "any evidence" to support the case of the nonmoving party. *Skelton v. Skelton*, 251 Ga. 631 (4) (308 SE2d 838) (1983). As the trial court correctly noted, the evidence was uncontroverted that on April 19, 2005, testator signed written revocations of the power-of-attorney he had given to caveatrix, and that she used that power-of-attorney four months after its revocation to sign the warranty deeds in issue.

Although caveatrix acknowledges the dates on which the documents were signed, she argues that the trial court erred in failing to allow her to introduce testimony regarding testator's state of mind

within a reasonable period of time before and after he signed the revocation. The record, however, belies that assertion. In colloquy before the conclusion of the evidence, the trial court noted that caveatrix had not sought to introduce evidence relating to testator's competency to execute the revocation, and had she made the request, the court would not have "limited [her] in any form or fashion." Trial counsel did not pursue the matter further.

Furthermore, caveatrix established by her own witness that testator executed the revocation at a bank in the presence of a bank employee whose signature appears on the document as a "witness." The bank employee testified that she had regularly assisted testator with his banking needs and that he appeared to be of sound mind at the time he signed the revocation. In fact, the witness testified that she would not have placed her signature on the document if she had perceived any signs of incompetency on his part. Thus, "the actual witness[ ] to [testator's] execution of the [document] had no doubts as to [his] mental capacity." *Thomas v. Garrett*, 265 Ga. 395, 398 (3) (456 SE2d 573) (1995).

As the evidence was undisputed that caveatrix executed the warranty deeds using a power of attorney that had been revoked months earlier, the trial court properly set aside the deeds and directed a verdict in favor of defendants as to this claim.

3. Finally, caveatrix asserts that the court abused its discretion in limiting testimony from her expert toxicologist as to whether a person's functioning level could be determined by that person's responses to general questions. The trial court disallowed the question observing that it was based on generalized statistics which would be of dubious help to the jury. See OCGA § 24-9-67.1. " '[T]he admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion.' " *Agri-Cycle v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008). Caveatrix has not demonstrated an abuse of that discretion.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 9, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Gaslowitz Frankel, Adam R. Gaslowitz, Craig M. Frankel, Brian M. Deutsch, Lisa C. Lambert, Douglas R. Daum*, for appellant.

*Kilpatrick Stockton, Burleigh L. Singleton, Stephen Noel*, for appellees.