A11A1836. DIPLOMAT CONSTRUCTION, INC. et al. v. STATE BANK OF TEXAS.

(726 SE2d 140)

DOYLE, Presiding Judge.

Diplomat Construction, Inc., Mukesh C. Patel, and Rajesh C. Patel appeal from a superior court's order confirming the nonjudicial foreclosure sale of a hotel leasehold interest held by State Bank of Texas (the "Lender") under a deed securing a $10,500,000 promissory note executed by Diplomat and guaranteed by the Patels. The Appellants contend that (1) the evidence was insufficient to show that the property brought its true market value at auction, (2) the superior court erred by sustaining a certain hearsay objection, (3) the foreclosure advertisements were erroneous and therefore impeded the auction, (4) the Lender's conduct at the auction improperly chilled bidding at the auction, and (5) the superior court erroneously excluded certain testimony by their expert. For the reasons that follow, we affirm.

> In confirming a nonjudicial foreclosure sale under OCGA § 44-14-161, the trial court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale. The trial judge in a confirmation proceeding sits as the trier of fact, and its [factual] findings and conclusions have the effect of a jury verdict. Thus, witness credibility and the weight of the evidence proffered by the parties at a confirmation hearing are to be judged by

---

[5] See *Wachovia Bank of Ga. v. Mothershed*, 210 Ga. App. 853, 854 (1) (437 SE2d 852) (1993).

the trial court, and not this Court on appeal. For this reason, we will not disturb the trial court's decision if there is any evidence to support it, and we view the evidence in the light most favorable to the trial court's judgment.[1]

So viewed, the record shows that after the Appellants defaulted on their obligations under the note and guaranties, the Lender initiated foreclosure proceedings.[2] The Lender sent the Appellants a notice of sale under power and advertised the sale by publication, including a description of the property matching that in the deed, for four weeks prior to the foreclosure sale.

On the day of the auction, the Lender was represented by an attorney, who stayed in contact with the Lender by telephone during the auction. The Patels were present and videotaped the auction,[3] and an unaffiliated party (Birju Patel) participated in the bidding via a representative, who had in her possession $6 million in funds with authorization to bid up to $2.5 million more. The bidding began at approximately $3 million, and both Birju and the Lender engaged in multiple rounds of bidding in $50,000 increments. On three occasions during the bidding process, the Lender's representative checked with Birju's representative to confirm that the representative had adequate funds to cover the pending bid. After each occasion, the bidding resumed, and when the Lender entered a bid of $4.6 million, Birju did not counter, and the Lender became the holder of the successful bid.

The Lender petitioned the superior court to confirm the sale, and a two-day evidentiary hearing was held pursuant to OCGA § 44-14-161, at which hearing the Appellants challenged the sufficiency of the sale advertisement, the regularity of the auction, and the adequacy of the selling price. Following the hearing, the superior court entered an order confirming the sale, giving rise to this appeal.

1. The Appellants first challenge the sufficiency of the evidence to show that the auction brought the true market value for the property. Under OCGA § 44-14-161, "[t]he court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that

---

[1] (Punctuation and footnotes omitted.) *Metro Land Holdings Investments v. Bank of America*, 311 Ga. App. 498, 498-499 (716 SE2d 566) (2011).

[2] State Bank of Texas was, for the relevant period, the ultimate successor to the original lender, Integrity Bank.

[3] The videotape was not made a part of the appellate record. The record does, however, contain sufficient competent testimony to describe the events of the auction.

the property so sold brought its true market value on such foreclosure sale."

> On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the [superior] court that the property brought its true market value at the foreclosure sale.[4]

At the confirmation hearing, the Lender's valuation expert testified that the value of the property was $3.4 million, which took into account the fact that the interest at auction was not fee simple and the remaining lease term was 25 years. The superior court found the expert credible and the valuation methodology sound, which supported the court's conclusion that the auction price of $4.6 million was fair. Nevertheless, the Appellants argue that the expert's valuation failed to take into account a separate tract of property consisting of an easement providing access to the hotel. Therefore, they contend that the valuation did not describe the entire interest sold and was an insufficient basis to determine the true market value. Despite this characterization of the expert's testimony, it is clear from a review of the record that the expert indeed valued the entire interest, including the parking lot and tract providing access to the hotel property. The expert's report contained photographs and a legal description of the property, which included the disputed tract here. Accordingly, as there was competent evidence supporting the superior court's finding, this enumeration is without merit.[5]

2. (a) The Appellants also challenge the superior court's ruling on the Lender's hearsay objection to testimony by Birju Patel, who was not present at the auction, as to why he stopped bidding through his representative. Appellants' counsel's examination focused on the Lender's verification of funds, and the following colloquy ensued:

> [Appellants' Counsel]: . . . What happened next [as you bid during the auction]?
>
> [Witness]: Then the bank would subsequently outbid by [$]100,000. We would go up another [$]50,000 on top of that, and it continued. I think there was three times. Three times there was places where . . . my attorney was asked to show the funds.

---

[4] *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454 (1) (415 SE2d 4) (1992).

[5] See id.

[Lender's Counsel]: Objection, Judge. This has to be hearsay.

[Court]: You weren't there, were you?

[Witness]: My attorney let me know, and there was —

[Court]: Mr. Patel —

[Appellants' Counsel]: Listen to the Judge.

[Court]: That's sustained.

[Appellants' Counsel]: The tape shows what it shows so you don't need to say anything that your attorney told you.

[Witness]: Okay.

[Appellants' Counsel]: At some point did you decide to stop bidding?

[Witness]: Yeah, when it reached [$]4.5 million.

[Appellants' Counsel]: You just said you were willing to pay up to [$]8.5 [million]. Why would you stop bidding at [$]4.5 [million]?

[Witness]: Because they knew — they had all my cards in play. They knew how much I was — how much cash I had at the sale so —

[Lender's Counsel]: Objection, foundation, hearsay.

[Appellants' Counsel]: Your honor, this is not being used for the truth of the matter asserted. It is not hearsay for the following reason: we are not trying to establish through [the witness] whether the attorney was truthfully telling him that the lawyer kept checking the funds. What we're establishing is his understanding that the lawyer kept checking funds. So his mindset is the linchpin to this case.

[Court]: Sustained.

The Appellants argue that this ruling was erroneous.

Under OCGA § 24-3-1, "[h]earsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." Here, the challenged testimony was, essentially, that Birju decided to stop bidding "because [the Lender] knew . . . how much cash I had at the sale." As the superior court noted, Birju was not present at the auction, and, as explained by Birju, his attorney told him that the Lender had checked the funds. Therefore, Birju's statement that the Lender "knew . . . how much cash I had at the sale" was essentially a recitation of what his attorney told him. But, as argued by the Appellants at trial and on appeal, the value of this testimony did not depend on the veracity of the attorney telling the witness that the Lender had checked the available funds; rather, the value of the

testimony derived from the witness's account of his own motive for ending his bidding. Offered for this purpose, the testimony was not hearsay.[6]

Nevertheless, an erroneous hearsay ruling is not cause for reversal absent a showing of harm.[7] Here, the trial evidence included uncontradicted competent evidence that (i) the Lender did in fact confirm on separate occasions the adequacy of the bidder's funding, (ii) the bidder was prepared to bid substantially higher than the final bid, and (iii) the bidder chose to stop bidding after the Lender had checked the funds three times. Likewise, the Appellants were not prevented from forcefully arguing that the Lender's practice of checking available funds chilled the bidding and adversely affected the regularity of the sale. On the other hand, the Lender's representatives testified that the entire amount of funds was never confirmed and nothing other than the pending bid amount was communicated to the person making the Lender's bidding decisions, which is borne out by the undisputed fact that the Lender had to successively confirm the amounts of funds as the bidding rose. Finally, the bidder testified that he was willing to bid even higher than the amount of funds on hand (and he had ready access to those additional funds), so even discounting the Lender's testimony that it did not have knowledge of the bidder's strategy or total funds, any knowledge allegedly gained by the Lender would not have revealed the bidder's final bid ceiling. Under these circumstances, the ruling did not deprive Appellants of an evidentiary basis to support their challenge to the regularity, and the superior court had a sufficient record to consider the Appellants' argument and nevertheless find that the sale was regular, which it did. Therefore, the superior court's ruling on the hearsay objection does not warrant a reversal based on the particular facts of this case.

(b) The Appellants also argue that the superior court erred by ruling that the Lender's conduct did not create " 'a chilling of the bidding' . . . that adversely affected the foreclosure sale or the fair market value of the property." But for the same reasons that the erroneous hearsay ruling was not harmful as stated above, the record supported the superior court's ruling on this issue.

3. The Appellants next contend that the superior court erred by

---

[6] See OCGA § 24-3-2; *DI Uniform Svcs. v. United Water Unlimited Atlanta*, 254 Ga. App. 317, 324 (4) (562 SE2d 260) (2002) ("When the conduct and motives of the actor are relevant to the issues on trial, then conversations and similar evidence known to the actor are admissible to explain his conduct.").

[7] See *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001) ("It is axiomatic that harm as well as error must be shown to authorize a reversal by this court.") (punctuation omitted).

finding that the Lender's advertisement of the sale properly included a description of the property in accordance with OCGA § 9-13-140 (a). That Code section, "governing judicial sales,[8] requires that the advertisement include a full and complete description of the property to be sold . . . . In the case of real property, such advertisement shall include the legal description of such real property . . . ."[9]

Here, the notice included a legal description of the property matching that which appeared in the security deed. At trial, however, the Appellants presented testimony by a land surveyor who examined the description and discovered an apparent error in the metes and bounds, so that the property line as described would not be contiguous. This oversight, as argued by the Appellants, created an irregularity that rendered the description improper as a matter of law.

Nevertheless, it is undisputed that the legal description in the advertisement was identical to the description in the security deed by which the Lender took its interest from the Appellants. Thus, there was no discrepancy between the two, and the advertisement properly reflected the interest taken under the deed and available at the foreclosure sale. "The minimum legal requirements of a foreclosure advertisement are prescribed in OCGA § 9-13-140 (a), and only a failure to properly include those items will render the advertisement defective as a matter of law."[10]

> If a foreclosure advertisement is not defective as a matter of law, defects in it will prevent confirmation only if the factfinder determines those defects chilled bidding and caused an inadequate selling price. A primary object of the advertisement is to attract buyers who will compete against one another so as to yield the highest price; its contents are important to the process. Thus, errors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained.[11]

---

[8] "A nonjudicial foreclosure sale must be advertised in the same manner as a judicial foreclosure sale. OCGA § 44-14-162 (a). That manner is set forth in OCGA §§ 9-13-140 (a) and 9-13-141, which provide, among other things, that notice of the sale shall be published once a week for four weeks in the legal organ for the county." *Nexgen Cumming, LLC v. State Bank & Trust Co.*, 313 Ga. App. 715, 716 (722 SE2d 428) (2012).

[9] *Dan Woodley Communities, Inc. v. SunTrust Bank*, 310 Ga. App. 656 (714 SE2d 145) (2011) (quoting OCGA § 9-13-140 (a)).

[10] *Southeast Timberlands v. Security Nat. Bank*, 220 Ga. App. 359, 360 (1) (469 SE2d 454) (1996).

[11] (Punctuation omitted.) *Dan Woodley Communities, Inc.*, 310 Ga. App. at 657.

There is no evidence that the issue in the legal description was discovered prior to the sale or that the questionable description affected the bidding during the auction. Therefore, because the advertisement in this case accurately reflected the interest described in the security deed, and because there was no showing that the alleged defect affected the bidding, we discern no error in the superior court's ruling on this issue.[12]

4. Finally, the Appellants argue that the superior court erred by refusing to allow their expert witness to testify as to the regularity of the sale. During the hearing, the Appellants called George Maynard, an experienced real estate attorney who had conducted several hundred foreclosures, to testify about the auction process. On direct examination, Maynard described the auction process and gave his opinion about the standard practice for confirming adequate funds during a foreclosure auction. Toward the end of the examination, Appellants' trial counsel asked "Have you reached any conclusions after watching the video as to the regularity of the sale that was called and depicted in [the] video [you saw]?" At that point, the Lender interposed an objection, stating that the question went to the ultimate issue, which was for the superior court to determine. The trial court sustained the objection, which ruling the Appellants now assign as error.

"The admissibility or exclusion of expert testimony rests in the broad discretion of the [trial] court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[13] This Court has stated that opinion "testimony of an expert even as to the ultimate issue is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves, i.e., the conclusion is beyond the ken of the [layperson]."[14] Nevertheless, "it is well established that an expert witness may not state a legal conclusion as to the ultimate issue."[15]

In this confirmation hearing, the superior court was charged

---

[12] See *Belans v. Bank of America*, 306 Ga. App. 252, 256-257 (3) (701 SE2d 889) (2010) (advertisement description was sufficient because the property description in the advertisement was the same as that in the loan deed); *Norwood Realty Co. v. First Fed. Sav. & Loan Assn. of Atlanta*, 99 Ga. App. 692, 695 (3) (109 SE2d 844) (1959) (same).

[13] (Punctuation omitted.) *Caswell v. Caswell*, 285 Ga. 277, 280 (3) (675 SE2d 19) (2009).

[14] (Punctuation omitted.) *PN Express v. Zegel*, 304 Ga. App. 672, 679 (4) (697 SE2d 226) (2010).

[15] *McGraw v. Smith*, 232 Ga. App. 513, 515 (2) (502 SE2d 347) (1998). See also *Rayburn v. Ga. Power Co.*, 284 Ga. App. 131, 139 (3) (643 SE2d 385) (2007) (expert's opinion that defendant company "retained control" over contractor's employees was an inadmissible legal conclusion); *DeVooght v. Hobbs*, 265 Ga. App. 329, 334 (3) (593 SE2d 868) (2004) (expert opinion that actions of one party were imputable to another was an inadmissible legal conclusion); *Allen v. Columbus Bank & Trust Co.*, 244 Ga. App. 271, 277-278 (2) (534 SE2d 917) (2000) (opinion that letter "may be fraudulent" was an inadmissible legal conclusion).

with determining whether the sale was regular in accordance with the law.[16] In this respect, the superior court was not akin to a layperson who would not ordinarily be able to determine whether a foreclosure sale was regular. The trial court did admit the witness's testimony describing the usual practices, based on his experience, during a foreclosure auction, and the trial court explicitly acknowledged the witness's testimony about the "usual standard . . . for the verification of funds." The only testimony excluded by the trial court was the witness's opinion as to whether the sale was regular. Under these circumstances, we discern no abuse of discretion in the trial court's ruling.[17]

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 19, 2012.

*Knight Johnson, James M. Johnson, Ariel D. Zion*, for appellants.

*Parker, Hudson, Rainer & Dobbs, Joshua J. Lewis, Eric J. Taylor, Paul H. Anderson, Jr.*, for appellee.

---

[16] See OCGA § 44-14-161 (c) ("at the hearing the court shall . . . pass upon the legality of the notice, advertisement, and regularity of the sale").

[17] See, e.g., *Giannotti v. Beleza Hair Salon*, 296 Ga. App. 636, 642 (2) (675 SE2d 544) (2009) (expert testimony about the standard of care was admitted, but further testimony excluded as not beyond the ken of the average juror).