**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**February 6, 2014**

# In the Court of Appeals of Georgia

A13A2471. POWDER SPRINGS HOLDINGS, LLC et al. v. RL BB
 ACQ II-GA PSH, LLC.

MCMILLIAN, Judge.

Powder Springs Holdings, LLC and others[1] (collectively "Powder Springs")
appeal from the trial court's order confirming the nonjudicial foreclosure sale of
certain real property (the "Property") by appellee RL BB ACQ II-GA PSH, LLC ("RL
BB"). Powder Springs enumerates two errors, contending that the trial court erred by
denying its motion to dismiss based on RL BB's failure to obtain a certificate of
authority prior to instituting the confirmation proceedings, which it contends was
required under OCGA § 14-11-711, and that the trial court erred by confirming the

---

[1] The other parties to this appeal are the guarantors of the loan.

sale because RL BB failed to present evidence of the fair market value of the Property as of the date of foreclosure. As more fully set forth below, we now affirm.

For purposes of this appeal, the underlying facts are undisputed. In July 2006, Powder Springs executed a promissory note, as subsequently modified, in favor of Branch Banking and Trust Company ("BB&T"), which was guaranteed by several individuals and an LLC and secured by a deed to secure debt (collectively "loan documents"). In 2011, BB&T transferred, assigned and conveyed all its interest in the loan documents to Rialto Real Estate Fund, LP ("Rialto"), a Delaware Limited Partnership, and Rialto subsequently transferred, assigned and conveyed its interest in the loan documents to appellee RL BB. By this time the loan was in default, and RL BB instituted foreclosure proceedings pursuant to the power of sale contained in the security deed and thereafter conducted a foreclosure sale of the property securing the loan. Pursuant to OCGA § 44-14-161, RL BB then reported the sale to an appropriate superior court judge and filed the present confirmation petition. Following two hearings, the trial court confirmed the sale, and Powder Springs filed this appeal.

1. We first consider whether the trial court should have dismissed the confirmation petition because RL BB, a Florida limited liability company, was not authorized to transact business in Georgia.

Pursuant to OCGA § 14-11-702 (a), a foreign limited liability company transacting business in this state is required to obtain a certificate of authority from the Georgia Secretary of State, subject to certain exceptions set forth in OCGA § 14-11-702 (b). Further, OCGA § 14-11-711 (a) prohibits a foreign limited liability company transacting business in this state from maintaining an action, suit, or proceeding in the courts of this state until it has obtained the required certificate.[2]

[2] We will assume for the sake of our analysis that the filing of the confirmation petition constituted "proceeding[s]" within the meaning of OCGA § 14-11-711 (a), noting that the parties do not contend otherwise. But see e.g., *River Walk Farm, L.P. v. First Citizens Bank & Trust Co.*, 321 Ga. App. 173, 176 (1) (741 SE2d 165) (2013) (confirmation proceeding is a limited statutory proceeding and issues concerning assignment and standing are outside the scope of the proceeding); *Boring v. State Bank &c. Co.,* 307 Ga. App. 93, 95 (1) (704 SE2d 207) (2010) (same); *BBC Land & Dev., Inc. v. Bank of North Georgia*, 294 Ga. App. 759, 760 (1) (670 SE2d 210) (2008) ("application for confirmation pursuant to OCGA § 44-14-161 is a special statutory proceeding and not a complaint which initiates a civil action or suit in the ordinary meaning of those terms"); *Sparti v. Joslin*, 230 Ga. App. 346 (496 SE2d 490) (1998) (real party in interest not relevant at confirmation proceeding); *Vlass v. Security Pacific Nat. Bank*, 263 Ga. 296, 297 (1) (430 SE2d 732) (1993) (filing of application for confirmation is not a "complaint" which initiates a "civil action" and thus need not be served on the debtor); *Wammock v. Smith*, 143 Ga. App. 186, 187 (2) (237 SE2d 668) (1977) (because a confirmation is not a "suit," foreign trustee need not file a certified copy of his appointment before he may "sue"); *Jonesboro*

3

Relying on this section, Powder Springs moved to dismiss the confirmation petition,[3] arguing that RL BB admitted in the confirmation petition that it "does business" in Georgia. RL BB defended the motion, arguing that the only business it transacted in this state was in connection with the loan and foreclosure related to the confirmation petition, and that all of these activities fell within the exceptions listed in OCGA § 14-11-702 (b). The trial court subsequently denied the motion without stating the specific basis for its decision.

On appeal, Powder Spring again relies solely on RL BB's "affirmative allegation" in its confirmation petition that it "does business in the State of Georgia,"

*Investment Trust Assn. v. Donnelly*, 141 Ga. App. 780, 783 (1) (234 SE2d 349) (1977) (confirmation proceeding is an application to a judge and not a "suit").

[3] In *Carrier 411 Svcs., Inc. v. Insight Technology, Inc.*, ___ Ga.App. ___ (1) (Case Number A13A0324, decided June 11, 2013), we held that a oral motion to dismiss asserted at trial based on a foreign corporation's failure to obtain a certificate of authority prior to instituting garnishment proceeding was untimely, reasoning that this affirmative defense should have been specially pled in the garnishee's answer. But, as Powder Springs points out, the debtor in a foreclosure confirmation case is not required to file an answer, see OCGA § 44-14-161; *Belans v. Bank of America*, 309 Ga. App. 208, 211-212 (709 SE2d 853) (2011), and our law allows an adverse party who is not required to file a responsive pleading to "assert at the trial any defense in law or fact to th[e] claim for relief." OCGA § 9-11-12 (b). See also *Ramchandani v. State Bank &c. Co.,* ___ Ga. App. ___ (Case Number A13A1530, decided October 10, 2013) (discussing applicability of the Civil Practice Act to confirmation proceedings); *Small Bus. Admin. v. Desai*, 193 Ga. App. 852, 853 (1) (389 SE2d 372) (1989) (same).

arguing that this "admission in solemn judicio" relieved Powder Springs of presenting any other evidence to establish that RL BB was required to obtain a certificate of authority prior to availing itself of the courts of this state. See OCGA § 24-8-821[4] ("Without offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other").

Although it is true, as Powder Springs contends, that a party is estopped from contradicting a solemn admission in judicio, that rule applies only to admissions of fact and does not apply when the admission is merely the opinion or conclusion of the maker as to the law or fact. In other words, "[t]he rule as to admissions in judicio does not apply to legal conclusions but only to statements of fact." *In re Estate of Chambers*, 261 Ga. App. 737, 740 (1) (583 SE2d 565) (2003). Here, RL BB alleged that it "does business" in Georgia, but, without more, that does not prove that it was required to obtain a certificate of authority to transact business in this state. The statute specifically provides that certain specified business activities "shall not be considered to be transacting business in this state, for the purpose of qualification

---

[4] We note that the final hearing on the petition was held after the January 1, 2013 effective date of the new Georgia Evidence Code and accordingly the citations in this opinion are to those provisions. We note, however, that OCGA § 24-8-821 was formerly codified at OCGA § 24-3-30 and that the prior and present versions are substantially the same.

5

under this chapter," thereby allowing a foreign limited liability company to engage in these business activities without having to obtain a certificate of authority. OCGA § 14-11-702 (b). Thus, determining whether a foreign limited liability company is "transacting business" in this state within the meaning of OCGA § 14-11-702 (a) also requires a determination of whether any of the exclusions listed in subsection (b) apply, and presents a mixed question of fact and law concerning whether the company is required to obtain a certificate of authority because it is "transacting" business in this state within the meaning of the statute. E.g., *Mansell 400 Assoc. v. Entex Information Svcs., Inc.,* 239 Ga. App. 477, 482 (519 SE2d 46) (1999) (on motion for reconsideration) (party not bound by his admission that he "vacated" the premises because the "vacate" as used in the lease was a question of law for the court to determine).

In this case, the pleadings and evidence show only that RL BB conducted the following activities in Georgia: acquired the underlying loan documents, advertised and conducted the foreclosure sale, purchased the property at the foreclosure sale, reported the sale and filed the confirmation petition. Powder Springs did not present

6

any evidence showing that RL BB transacted any other business in Georgia.[5] A limited liability company is not considered to be transacting business in Georgia merely because it engages in activities of this type. See OCGA § 14-11-702 (b).[6] "A defendant bringing a motion in abatement [,such as the one asserted by Powder Springs,] has the burden of proving the facts necessary to support a judgment of dismissal." *Carrier 411 Svcs., Inc. v. Insight Technology, Inc.*, ___ Ga. App. ___ (1) (Case Number A13A0324, decided June 11, 2013). This Powder Springs failed to do. Accordingly, the trial court did not err by denying the motion to dismiss. Id.

2. Powder Springs also contends that the trial court should have disregarded RL BB's appraiser's testimony concerning the value of the property because: (1) 'the appraiser admitted [at the hearing] that he did had no 'current' opinion about the

---

[5] We reach our conclusion without considering the effect, if any, of RL BB's assertion that it is a special purpose entity formed solely to handle the underlying foreclosure and related proceedings, an assertion that was supported only by the testimony of the foreclosure attorney who stated at the confirmation hearing that "RL BB is a special purpose entity created by Rialto."

[6] That section provides in pertinent part as follows: "a foreign limited liability company shall not be considered to be transacting business in this state, . . . solely by reason of carrying on . . . one or more of the following activities: (7) Making loans or creating or acquiring evidences of debt, mortgages, or liens on real or personal property or recording same; (8) Securing or collecting debts or enforcing any rights in property securing the same; (9) Owning, without more, real or personal property[.]"

7

value [of the property] on the date of the foreclosure;" (2) the appraiser's testimony concerning the market value of Property was not the "product of reliable principles and methods;" and (3) the appraiser failed to apply "the principles and methods reliably to the facts of the case." See OCGA § 24-7-702 (2013).[7]

> As we have explained on several occasions,
>
> the confirmation process, which is a condition precedent to an action for deficiency judgment, was intended to protect a debtor from a deficiency judgment when the involuntary sale brings less than the true market value. The law requires that, following an application for confirmation of a foreclosure sale under power of sale, the trial court hold a hearing to require evidence of the property's true market value and to pass upon the legality of the notice, advertisement, and regularity of the sale. The trial court's primary duty at a hearing is a judicial ascertainment that the property brought at least its true market value on the foreclosure sale.

(Citations and punctuation omitted.) *Nicholson Hills Dev., LLC v. Branch Banking &c. Co.,* 316 Ga. App. 857, 860 (1) (730 SE2d 572) (2012). See also OCGA § 44-14-161. To fulfill its duty

> the court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it

---

[7] The prior version, which was substantially the same, was codified at OCGA § 24-9-67.1.

is satisfied that the property so sold brought its true market value on such foreclosure sale. On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the superior court that the property brought its true market value at the foreclosure sale.

(Citation and punctuation omitted.) *Diplomat Constr., Inc. v. State Bank of Texas,* 314 Ga. App. 889, 890-891 (1) (726 SE2d 140) (2012).

At the final confirmation hearing, RL BB presented the testimony of Connie Richard Gragg, Jr., a certified general appraiser who was admitted without objection as an expert on commercial real estate evaluation. Gragg gave his opinion that the value of the property, which consisted of approximately 23 acres of undeveloped land zoned primarily for retail use in Powder Springs, Georgia, was approximately $1.8 million as of the date of the foreclosure sale. Further, Gragg testified at length concerning the method he used to appraise the property, why he chose that particular method, the market conditions effecting his appraisal, the factual information upon which he based his appraisal and other factors he took into account in reaching his opinion concerning the true market value of the property. Moreover, although Gragg testified that he prepared his appraisal report on May 13, 2011, approximately three

weeks before the foreclosure sale on June 7, 2011, he unequivocally testified that he was familiar with the market conditions during the intervening weeks and that there had been no change in those conditions which would affect the value of the property.

During cross-examination, Powder Springs questioned Gragg concerning "retrospective appraisals" and whether Gragg had done any additional work to determine if there had been any comparable sales after the foreclosure sale. Powder Springs also elicited testimony from Gragg to the effect that he was not testifying about the value of the property as of the date of the confirmation hearing, but was "defending" his evaluation of the property and his opinion concerning its value at the time of the appraisal and foreclosure. Following this testimony, Powder Springs moved to exclude Gragg's testimony and dismiss the confirmation petition, arguing that there was no evidence of the fair market value of the property as of the date of foreclosure because Gragg did not "update" his appraisal prior to the hearing "to give his current opinion about the date, about the value of the property on the date of the foreclosure" but instead gave his "historical opinion." The trial court took the motion under advisement and subsequently denied the motion in the order granting the confirmation of the sale. Powder Springs now challenges that ruling, arguing that the superior court should have disregarded Gragg's testimony and then dismissed or

denied the confirmation petition because no other evidence of the value of the Property at the time of the foreclosure had been presented.

We find no error. First, notwithstanding Powder Springs' characterization of Gragg's testimony, Gragg clearly testified concerning the value of the property at the time of the foreclosure, based on his evaluation of the market conditions and appraisal of the property at that time. As we have stated on numerous occasions, it is the date of the foreclosure sale that is relevant in determining the true market value of the property. E.g., *Wilson v. Prudential Indus. Properties., LLC*, 276 Ga. App. 180, 182 (2) (622 SE2d 890) (2005) ("[The] true market value is determined as of the date of foreclosure sale."). We thus find Powder Springs's argument that Gragg's testimony did not establish the value of the property as of the relevant date to be unavailing, as did the trial court. *Diplomat Constr.,* 314 Ga. App. at 891 (1).

Further, we find no merit to Powder Springs' contention that Gragg's testimony concerning the value of the property was inadmissible because it was not based on reliable principles and methods and because he failed to apply the principles and methods reliably to the facts of the case. See OCGA § 24-7-702 (2013).[8] In support

---

[8] We note that the final hearing on the petition was held after the January 1, 2013 effective date of the new Georgia Evidence Code, but that OCGA § 24-7-702

11

of this contention, Powder Spring argues that Gragg should have performed a "retrospective" appraisal, so that he could give his current opinion about the value of the property on the date of foreclosure. But, as we have also held on numerous occasions, the confirmation statute does not specify, or preclude, any particular method for appraising property to determine its true market value at the time of the foreclosure. *Ivy Road Properties, LLC v. First Citizens Bank &c. Co.*, 311 Ga. App. 409, 411 (2) (715 SE2d 809) (2011) ("OCGA § 44-14-161 (b) does not preclude any specific method of property appraisal"). And, as stated above, Gragg testified extensively about his training and the factual information and methods he used to arrive at his opinion, and there is no contention that those methods were not reliable–indeed Gragg testified that he adhered to the standards in appraising the property that Powder Springs argues on appeal were applicable here. Using these methods, and the market conditions existing at the time of the foreclosure, Gragg was able to give his opinion about the market value of the property as of the date of foreclosure. As stated above, this is what the law requires. "The admissibility or exclusion of expert testimony rests in the broad discretion of the trial court, and

is substantially the same as the prior version, which was codified at OCGA § 24-9-67.1.

consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion." *Diplomat Constr.*, 314 Ga. App. at 895 (4). Based on the foregoing, we find the trial court did not abuse its discretion by admitting Gragg's testimony.[9] Accordingly, sufficient, competent evidence supported the superior court's finding that the sale should be confirmed.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

---

[9] The record clearly demonstrates that the trial court properly performed its "gatekeeper" function prior to ruling that the expert's testimony was admissible in this case. See *Boring v. Bank & Trust Co.,* 307 Ga. App. 93, 98 (704 SE2d 207) (2010) (Blackwell, J., concurring specially).