**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1093. YELLOW CREEK INVESTMENTS, LLC et al. v.
 MULTIBANK 2009-1 CRE VENTURE, LLC.

McFadden, Judge.

This is an appeal from the confirmation of a foreclosure sale. The debtors and guarantors maintain that the sale should not have been confirmed and therefore that they should not be liable for any deficiency of the sale price to satisfy the secured debt.

The present case is the second confirmation proceeding arising out of the foreclosure at issue. In 2011, Multibank 2009-1 CRE Venture, LLC ("Multibank") unsuccessfully sought to confirm a foreclosure sale of property securing a loan evidenced by a promissory note executed by Yellow Creek Investments, LLC and guarantied by two individuals (collectively, "Yellow Creek"). The trial court instead

ordered a resale of the property, which Multibank conducted in early 2013, resulting in the sale of the property to its wholly-owned subsidiary, MB REO-GA Land, LLC. The trial court confirmed the 2013 sale, and Yellow Creek appeals.

Yellow Creek argues that Multibank lacked title to the property at the time of the 2013 sale because the trial court did not rescind the 2011 sale, but the trial court's resale order had the effect of setting aside the 2011 sale and Yellow Creek's challenge to Multibank's title falls outside the ambit of a confirmation proceeding. Yellow Creek argues that Multibank's advertisement of the 2013 sale was defective as a matter of law because its description of the property did not match the legal description in the deed to secure debt, but we find that the evidence authorized the trial court to find the advertisement's description was sufficient. Finally, Yellow Creek argues that Multibank did not show that it consummated its sale of the property to MB REO-GA Land, but the evidence authorized the trial court to find that the sale was consummated. Accordingly, we affirm.

In ruling on a confirmation petition, a trial court "is required not only to determine whether the property sold brought its true market value but also to pass upon the legality of the notice, advertisement, and regularity of the sale." *Martin v. Fed. Land Bank of Columbia*, 173 Ga. App. 142 (325 SE2d 787) (1984) (citations and

2

punctuation omitted); see OCGA § 44-14-161. "The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them. We apply a de novo standard of review to any questions of law decided by the trial court." *Citizens Bank of Effingham v. Rocky Mountain Enterprises*, 308 Ga. App. 600, 601 (708 SE2d 557) (2011) (citations and punctuation omitted).

So viewed, the record shows that in 2011, Multibank (the successor to original lender Magnet Bank ) initiated foreclosure proceedings on two tracts of property after Yellow Creek defaulted on its obligations under a promissory note and guaranties. After selling the property at foreclosure to MB REO-GA Land, Multibank sought confirmation of the sale. Errors were identified in the legal description of the property found in the deed to secure debt from Yellow Creek to Magnet Bank; the deed's legal description omitted a land lot reference and did not match the metes and bounds survey of the property in other respects. Yellow Creek argued that these errors invalidated the foreclosure sale, but the trial court did not agree, instead finding that "[n]o evidence has been introduced that the errors in the legal description were discovered prior to the sale or that the errors affected the bidding," and concluding that the "foreclosure procedures complied with the legal requirements as to notice,

3

advertisement and regularity of the sale." Nevertheless, the trial court was persuaded by Yellow Creek's expert appraisal witness that the property's true market value was higher than what it had brought at foreclosure and, accordingly, denied confirmation. The trial court also ordered that the property be resold.

Accordingly, in January 2013 Multibank advertised a second foreclosure sale of the property, this time using a description that corrected the errors previously identified in the deed to secure debt's legal description. Multibank also stated in the advertisement that it would provide the purchaser at foreclosure a title insurance policy on the property. MB REO-GA Land again purchased the property at foreclosure. Subsequently, Multibank applied the foreclosure purchase price to the amount Yellow Creek owed under the promissory note, thereby reducing that amount.

Multibank again sought confirmation. In response, Yellow Creek argued, among other things, that Multibank did not have title to the property at the time of the 2013 foreclosure sale; that the advertisements of the second sale inadequately described the property because they did not match the legal description found in the deed to secure debt; and that Multibank had not shown that the foreclosure sale was consummated because it did not present evidence of the transfer of consideration

4

from MB REO-GA Land to Multibank. After an evidentiary hearing, the trial court confirmed the second foreclosure sale. Yellow Creek appeals.

1. *Title to the property.*

Yellow Creek argues that the trial court erred in confirming the 2013 sale on the ground that "the subject foreclosure sale was invalid because, as of the date of that sale (February 5, 2013), [Multibank] had already transferred title to the Property through a recorded Deed Under Power [related to the first foreclosure sale] that had not been rescinded." We are not persuaded.

OCGA § 44-14-161 (c) permitted the trial court to "order a resale of the property for good cause shown." The trial court's order required Multibank to resell the property. See *Adams v. Gwinnett Commercial Bank*, 140 Ga. App. 233 (1) (230 SE2d 324) (1976). The resale order also had the effect of setting aside the 2011 sale. See Frank S. Alexander, *Ga. Real Estate Finance and Foreclosure Law*, § 9:5 (2014) ("A denial of confirmation which is accompanied with an order of resale is itself an order setting aside the foreclosure.") (citations omitted). Accordingly, that order, "denying confirmation and setting aside the foreclosure sale[,] return[ed] the parties to the position they occupied prior to the sale." Id. (citations omitted). Although Yellow Creek questions the fairness of this procedure in cases involving a third-party

5

purchaser, this court has recognized that "the purchaser at public outcry, whether a party to the debt, or a third person, bids at the sale with full knowledge of" the possibility that the trial court will order a resale in connection with a subsequent confirmation proceeding. *Davie v. Sheffield*, 123 Ga. App. 228, 230 (180 SE2d 263) (1971). See generally *Homes of Tomorrow v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 321, 323 (3) (245 SE2d 475) (1979) (issue of and potential for resale is part of every confirmation case).

Moreover, Yellow Creek's challenge to Multibank's title to the property at the time of the 2013 sale

> falls outside the ambit of OCGA § 44-14-161. Confirmation proceedings brought under OCGA § 44-14-161 do not adjudicate title. And even if title of the property was not clear on the date of the [second foreclosure] sale, [Yellow Creek] has not shown that, under the circumstances of this case, a cloud of title adversely affected any protection afforded [them] as debtor[s] under OCGA § 44-14-161.

*Friedman v. Regions Bank*, 288 Ga. App. 57, 58-59 (653 SE2d 507) (2007) (citations omitted). Accordingly, this claim of error provides no ground for reversal.

2. *Sufficiency of property description in advertisement.*

6

Yellow Creek argues that the trial court erred in confirming the 2013 sale because the corrected property description in Multibank's sale advertisement did not match the incorrect legal description in the deed to secure debt. We disagree.

"A nonjudicial foreclosure sale must be advertised in the same manner as a judicial foreclosure sale. OCGA § 44-14-162 (a). That manner is set forth in OCGA §§ 9-13-140 (a) and 9-13-141[.]" *Nexgen Cumming, LLC v. State Bank & Trust Co.*, 313 Ga. App. 715, 716 (722 SE2d 428) (2012). "OCGA § 9-13-140 (a) . . . requires that the advertisement include a full and complete description of the property to be sold. . . . In the case of real property, such advertisement shall include the legal description of such real property[.]" *Dan Woodley Communities v. Suntrust Bank*, 310 Ga. App. 656 (714 SE2d 145) (2011) (punctuation omitted). The requirements prescribed in OCGA § 9-13-140 (a) are the "minimum legal requirements of a foreclosure advertisement . . . , and *only* a failure to properly include those items will render the advertisement defective as a matter of law." *Southeast Timberlands v. Security Nat. Bank*, 220 Ga. App. 359, 360 (1) (469 SE2d 454) (1996) (citation omitted; emphasis supplied).

> If a foreclosure advertisement is not defective as a matter of law, defects in it will prevent confirmation only if the factfinder determines those

7

defects chilled bidding and caused an inadequate selling price. A primary object of the advertisement is to attract buyers who will compete against one another so as to yield the highest price; its contents are important to the process. Thus, errors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained.

*Dan Woodley Communities*, 310 Ga. App. at 657 (citation and punctuation omitted).

There was evidence at the confirmation hearing that advertisement for the 2013 sale contained a correct legal description of the property. Accordingly, the trial court was authorized to find that the advertisement met the minimum legal requirements prescribed by OCGA § 9-13-140 (a). See *Collier v. Vason*, 12 Ga. 440, 443 (1853) (requirement that advertisement contain full and complete description of property can be met by description "by which the public may readily understand what particular property is embraced in the advertisement," considering the particular characteristics of that property, and whether description met requirement was question of fact for factfinder) (emphasis omitted). We find no merit in Yellow Creek's argument that our decision in *Diplomat Constr. v. State Bank of Texas*, 314 Ga. App. 889 (726 SE2d 140) (2012), renders an advertisement containing a *correct* legal description defective as a matter of law if that correct description does not match the description found in

8

the deed to secure debt. Instead, *Diplomat Constr.* stands for the proposition that an advertisement containing an *incorrect* legal description nevertheless meets the requirements of OCGA § 9-13-140 (a) if the description matches that found in the deed to secure debt. *Diplomat Constr.*, 314 Ga. App. at 894-895 (3). Moreover, in *Shantha v. West Ga. Nat. Bank*, 145 Ga. App. 712, 713 (244 SE2d 643) (1978), we held that a foreclosure advertisement's property description, which corrected "misdescriptions in the warranty deed and loan deed," was "fully adequate."

There also was evidence that the discrepancies between the incorrect description in the deed to secure debt and the correct description in the advertisement did not chill the bidding. Multibank's expert witness testified that the discrepancies were minor, the advertisement informed potential bidders that Multibank would provide a title insurance policy covering any title concerns related to the discrepancies, and parties other than MB REO-GA Land (the eventual purchaser) were present at the sale. See *Oates v. Sea Island Bank*, 172 Ga. App. 178, 179 (2) (a) (322 SE2d 291) (1984) (evidence supported trial court's finding that incorrect plat book number in legal description in advertisement did not have chilling effect on sale, where there was evidence that parties other than bank were present at sale, appraisal witness had no trouble locating property using description in advertisement, and

9

appellant presented no evidence to support contention of chilling effect). The trial court was not required to deny confirmation on account of the legal description used in the advertisement for the 2013 sale. See *Shantha*, 145 Ga. App. at 714.

3. *Transfer of consideration.*

Yellow Creek argues that the trial court erred in confirming the foreclosure sale because Multibank failed to show the transfer of consideration required to consummate the sale. See *Tampa Investment Group v. Branch Banking & Trust Co.*, 290 Ga. 724, 727 (1) (723 SE2d 674) (2012) ("Until a deed under power is transferred and consideration is passed, the sale itself has not occurred; there is only a contract to buy and sell.") (citations and punctuation omitted).

The evidence supported the trial court's determination that the sale had been consummated. There was no dispute that Multibank conveyed the property to the buyer, its wholly-owned subsidiary MB REO-GA Land, through a deed under power that was recorded. And the fact that Multibank reduced Yellow Creek's debt by the sale amount permitted the inference that Multibank had received consideration in that amount. Given these facts, we disagree with Yellow Creek that Multibank was required to show more specific details about the transfer of consideration in order to prove that the sale had been consummated. Cf. *Adcock v. Berry*, 194 Ga. 243 (1) (21

10

SE2d 605) (1942) (foreclosure sale was not invalidated by subsequent arrangement between seller and highest bidder whereby seller accepted bidder's note in lieu of cash but was accountable for the note as cash in settling with debtor).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur*.