## A10A1106. BORING et al. v. STATE BANK AND TRUST COMPANY.
### (704 SE2d 207)

BARNES, Presiding Judge.

Richard M. Boring and Mechanical Equipment and Supply, Inc. (hereinafter collectively "Boring"), appeal from the trial court's order confirming the foreclosure sale of certain properties that State Bank and Trust Company held as security for commercial loans Boring guaranteed. Upon our review, we affirm.

In confirming a nonjudicial foreclosure sale under OCGA § 44-14-161, the trial court "shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." OCGA §

---

44-14-161 (b). In such proceedings, the trial court sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict. See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180 (1) (622 SE2d 890) (2005), citing *McCain v. Galloway*, 267 Ga. App. 505 (600 SE2d 449) (2004). Thus, we will not disturb the trial court's decision if there is any evidence to support it. *Oates v. Sea Island Bank*, 172 Ga. App. 178 (1) (322 SE2d 291) (1984). Additionally, "we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." (Citation omitted.) *McCain v. Galloway*, supra.

So viewed, the evidence shows that in March 2005, SouthBank gave Sierra Vista of Habersham, LLC, a commercial loan in the amount of $1,420,000 to purchase certain real property in Habersham County, and the company gave SouthBank a deed to secure debt on the property. Contemporaneously with the execution of the promissory note, Richard Boring, Sierra Vista's registered agent and managing member, executed a guaranty in favor of SouthBank, personally guaranteeing the debt. In June 2005, SouthBank changed its name to Security Bank of North Metro. The note and Boring's guaranty were renewed several times during 2006 and 2007. In September 2007, Richard Boring and Mechanical Equipment and Supply, Inc., each executed a guaranty of the Sierra Vista loan renewal.

In July 2009, Security Bank was closed and the FDIC was appointed as Receiver for the bank, and became the successor-in-interest to the Note, security deed, guaranty, and renewals. In September 2009, the FDIC assigned its interest in the Sierra Vista note, Boring's guaranty, the security deed, and the renewals to State Bank. Sierra Vista defaulted on the loan, and in August 2009, State Bank accelerated the loan, declaring the principal balance due immediately.

State Bank foreclosed on the property, and in October 2009, purchased the approximately ten acres of land secured by the note for $600,000 as the highest bidder for cash. State Bank, thereafter, filed a petition to have the sale confirmed and approved for the purposes of pursuing a deficiency judgment against Boring. Boring filed its answer and a motion to dismiss, challenging the standing of State Bank to seek confirmation.

The parties stipulated as to the legality of the notice and the foreclosure sale itself. At the confirmation hearing, State Bank presented evidence on the true market value of the property through the testimony of its witness George Galphin, a certified general appraiser. Galphin testified that he had arrived at his valuation of the property through the use of the "sales comparison approach," comparing the property to five similar, recently sold properties. Galphin also testified that, of the five comparable properties, only

one of them had been a "distressed sale," which required him to make adjustments to the property's sale value in order to use it as a comparison to the property at issue.

The trial court admitted Galphin's testimony and appraisal into evidence and found that State Bank had made out its prima facie case that the foreclosure sale price represented the true market value of the property, entering an order confirming and approving the sale pursuant to OCGA § 44-14-161.

1. Boring first contends that the trial court erred in holding that State Bank had the requisite "legal standing" to bring its confirmation action against the guarantors, and in holding that the issue of standing was irrelevant to a confirmation proceeding under OCGA § 44-14-161. We do not agree.

OCGA § 44-14-161 (a) provides:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, . . . no action may be taken to obtain a deficiency judgment unless the *person instituting the foreclosure proceedings* shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

(Emphasis supplied.) At the confirmation hearing, Boring challenged State Bank's standing to bring the confirmation action because State Bank did not show that it had been properly assigned the guarantees. The trial court found that such standing issues were "outside the scope of a confirmation hearing," citing this court's opinion in *Sparti v. Joslin*, 230 Ga. App. 346 (496 SE2d 490) (1998). We agree.

Regarding the narrow applicability of the confirmation statute, our Supreme Court has explained:

> The only purpose of the confirmation statute is to subject the creditor's potential deficiency claim to the condition that the foreclosure sale under power be given judicial approval. The confirmation proceeding does not result in a personal judgment and it does not adjudicate the title of the property sold. Except as to the confirmed amount of the sale, *it does not establish the liability of any party with regards to the indebtedness*.

(Citation and punctuation omitted; emphasis supplied.) *Vlass v. Security Pacific Nat. Bank*, 263 Ga. 296, 297 (1) (430 SE2d 732) (1993).

In *McCain v. Galloway*, supra, 267 Ga. App. at 505, McCain argued that Galloway failed to prove that Bartow County Bank had assigned the note and security deed to him before he foreclosed on the property, and thus Galloway lacked standing to bring the confirmation action. Citing *Sparti*, this court reaffirmed that the confirmation proceeding is a limited statutory proceeding, in which an assignment issue was not relevant to the confirmation proceeding.

Similarly here, "[t]he issue [of] whether [State Bank] was a real party in interest is not relevant to this confirmation proceeding, which was commenced in accordance with OCGA § 44-14-161 (a) by the person instituting the foreclosure proceedings." *Sparti v. Joslin*, supra, 230 Ga. App. at 346 (1).

Accordingly, the trial court did not err in finding that the issue of standing was not relevant to the confirmation proceeding.

2. Although Boring also challenges the valuation evidence, we find no error. Boring contends that Galphin, the appraiser, did not testify with specificity regarding the accuracy of his comparables, and did not verify the accuracy of information he utilized in valuing the property, but that he relied on inadmissible conclusions and opinions of unidentified third parties from his file.

While an "expert witness must *not* be permitted to serve merely as a conduit for hearsay," *Whatley v. Terry*, 284 Ga. 555, 565 (V) (A) (668 SE2d 651) (2008), an expert witness's assessment of market value is placed in a special category as it is "exclusively a matter of opinion even though expressed as a fact." *Unified Govt. of Athens-Clarke County v. Watson*, 255 Ga. App. 1, 4 (2) (564 SE2d 453) (2002). Such an opinion "may rest wholly or in part upon hearsay, provided the witness has had an opportunity of forming a correct opinion." Id.

Here, the record reflects that Galphin relied on the factual data collected by his staff for his valuation, not on their opinions as to the value of the properties in question. There being no evidence that his valuation was based on sheer speculation, we will not second-guess his methodology. *Fayette Promenade v. Branch Banking &c. Co.*, 258 Ga. App. 323, 327 (574 SE2d 319) (2002).

> "As a general rule the price brought at a public sale, after proper and lawful advertisement, is prima facie the market value of the property sold, absent anything to indicate that there was chilling of the bidding, fraud, or the like adversely affecting the sale." *Thompson v. Maslia*, 127 Ga. App. 758, 764 (195 SE2d 238) [(1972)], and cit.

*Wachovia Mtg. Co. v. Moore*, 138 Ga. App. 101 (225 SE2d 460) (1976), overruled on other grounds, *Fed. Deposit Ins. Corp. v. Ivey-Matherly*

*Constr. Co.*, 144 Ga. App. 313, 315 (1) (241 SE2d 264) (1977). Based on the evidence more fully set forth above, sufficient evidence supported the trial court's confirmation of the foreclosure sale. *Marett Properties v. Centerbank Mtg. Co.*, 204 Ga. App. 265, 267 (419 SE2d 113) (1992).

Boring argues that due to "the current great real estate recession" this court should establish an evidentiary rule to the effect that an expert witness for the foreclosing party must introduce or rely on admissible evidence to show that comparable properties used in the assessment of the value of the foreclosure property were not "distressed sales." He does not suggest, however, under what authority such a rule might be based, except for some generalized notion of the trial judge as gatekeeper of the admissibility of evidence, such as that related to expert witnesses in *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 671 (681 SE2d 152) (2009).

Moreover, OCGA § 44-14-161 (b) simply states that "[t]he court shall require evidence to show the true market value of the property sold [in foreclosure] and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." The statute does not preclude any specific method of property appraisal.

*Judgment affirmed. Smith, P. J., and Blackwell, J., concur fully and specially.*

BLACKWELL, Judge, concurring fully and specially.

I concur fully in the majority opinion, but I write separately to explain why we do not scrutinize more carefully the methodology that the appraisal expert in this case used. In the majority opinion, we say that, because there is no evidence that the expert testimony about valuation was speculative, "we will not second-guess [the expert's] methodology." And that is appropriate in this case, I think, because no one filed a motion to exclude the testimony of this expert, no one objected at the hearing to his testimony on valuation, and no one moved to strike his testimony on valuation. Instead, after the expert testified about the value of the property without objection,[1] Boring simply argued that the expert testimony was insufficient to establish value because the methodology of the expert was, according to Boring, flawed. Accordingly, only the sufficiency of the evidence

---

[1] Boring did object once on hearsay grounds when the expert was explaining his methodology and relating discussions that he had with certain public officials, and the trial court overruled the objection. This objection, however, did not pertain to the testimony about valuation — which the expert already had given without objection — and it is not, therefore, material to our assessment of whether the evidence of valuation was sufficient to sustain the confirmation of the sale.

adduced at the confirmation hearing — not the admissibility of that evidence — was preserved for our review on appeal. In these circumstances, and because the confirmation statute specifies no particular means for appraising the true market value of the property at issue, I think that we correctly refrain from second-guessing the methodology used by the appraisal expert.

But when objection is timely and properly made to the admissibility of expert testimony in a civil action under OCGA § 24-9-67.1, second-guessing the methodology of the expert is precisely what the trial court is supposed to do. Enacted as part of the Tort Reform Act of 2005, OCGA § 24-9-67.1 permits a trial court to admit expert testimony in a civil case only when the testimony "will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue" and only to the extent that "[t]he testimony is the product of reliable principles and methods" and "[t]he witness has applied the principles and methods reliably to the facts of the case." OCGA § 24-9-67.1 (b). When objection is timely and properly made to the testimony of an expert witness, the trial court must function as a gatekeeper, see *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 671 (681 SE2d 152) (2009), and the trial court must scrutinize the methodology used by the expert and determine whether it is scientifically valid and, therefore, reliable before admitting the expert testimony. See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579, 592-593 (113 SC 2786, 125 LE2d 469) (1993).[2]

Nothing in our decision today should be understood as a retreat from our obligation to ensure that the trial courts fulfill their role as a gatekeeper. And nothing in our decision today should be construed as a holding that the ordinary standards for the admissibility of expert testimony in civil cases do not apply to appraisal experts or in confirmation proceedings. Because the admissibility of the expert testimony in this case was not preserved for our review, we are not required to, and we do not, address such things.

I am authorized to state that Presiding Judge Smith joins in this opinion.

DECIDED NOVEMBER 24, 2010.

*George E. Butler II*, for appellants.

---

[2] We look to *Daubert* and its progeny in construing OCGA § 24-9-67.1. See OCGA § 24-9-67.1 (f); *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008).

*Quirk & Quirk, Kathryn E. Baird, Brendan H. Parnell, Richard J. Dreger, Kenneth P. Robin,* for appellee.