A10A2352. JIMMY BRITT BUILDER, INC. et al. v. SUNTRUST BANK.

(706 SE2d 665)

BARNES, Presiding Judge.

Jimmy Britt Builder, Inc. and its principal, Jimmy O. Britt (collectively, "Jimmy Britt"), appeal from the trial court's order confirming a foreclosure sale by SunTrust Bank. Jimmy Britt contends that the trial court erred in entering the confirmation order because (1) SunTrust's appraiser used an "unsubstantiated and irrational discount" in valuing the property and (2) the court based its finding of true market value on an erroneous theory of law. Discerning no error, we affirm.

The record reflects that Jimmy Britt Builder, Inc. obtained a construction loan from SunTrust Bank for the development of two residential lots in the Stonewater Creek subdivision in Hoschton, Georgia (the "Property"). The loan was memorialized in a promissory note and secured by a deed to secure debt granting SunTrust a first priority security interest in the Property.[1] When the loan went into default, SunTrust foreclosed on the Property under the power of sale contained in its deed to secure debt. SunTrust was the only bidder at the foreclosure sale and purchased the Property for $294,485. At the time of the foreclosure sale, the Property was only partially developed: one lot remained vacant, while the other lot contained an uncompleted house. All construction on the house had ceased approximately one year prior to the sale.

---

[1] SunTrust also alleges in its complaint that Britt personally guaranteed repayment of the construction loan.

SunTrust brought the instant action to confirm the foreclosure sale. A confirmation hearing was conducted in which the primary issue considered by the trial court was the true market value of the Property.[2] No issue existed with regard to the value of the vacant lot, as the parties agreed that the true market value was $30,000, and expert testimony at the hearing supported that value. The parties, however, presented conflicting expert testimony regarding the value of the lot containing the uncompleted house.

SunTrust's expert, a real estate appraiser with over 13 years of experience who had performed thousands of appraisals over the course of his career, testified that the value of the uncompleted house was $264,485. According to the expert, the house was approximately 80 percent complete and was located in a "rather desolate" subdivision containing 60 vacant lots, 30 completed lots, a few partially completed lots, and a pool and tennis courts that were only partially completed. The uncompleted house also had been vandalized in that thieves had entered and stolen some of the copper pipes. To appraise the uncompleted house, the expert looked at the hypothetical value of the house if it were completed and arrived at a figure of $490,000. The expert then deducted from that figure the costs of completing the house based upon his consultation with two homebuilders. The expert also attempted "to figure out what [the] market is for the home, whether it's a builder, whether it's a personal buyer, . . . and the appeal to that market." As a result of this inquiry, the expert discounted the value of the property by an additional 15 percent for "builder/buyer risk," which he testified was necessary to take account of the risk involved in a homebuilder stepping in to purchase the house in its condition where another builder had only partially completed the construction. According to the expert, the 15 percent discount was an estimate that came from his conversations with the two homebuilders. After making these deductions from the hypothetical value of the house if completed, the expert arrived at his figure representing his opinion as to the true market value of the uncompleted house.

In contrast, Jimmy Britt's expert, a real estate appraiser who likewise had extensive experience in the industry, testified that the hypothetical value of the house if it were completed would be $445,000. After speaking with Jimmy Britt, the expert determined that the house was 31 percent incomplete. He then deducted that percentage from the hypothetical value of the house if completed to arrive at a true market value of the uncompleted house of $307,000.

---

[2] On appeal, Jimmy Britt does not challenge the legality of the notice, advertisement, or other procedural aspects of the foreclosure sale.

Jimmy Britt's expert did not apply a discount for builder/buyer risk as part of his calculation.

After hearing from the expert appraisers, the trial court concluded that the valuation of the uncompleted house by SunTrust's expert was more reliable and accurate than that of Jimmy Britt's expert. The trial court found that the 15 percent discount for builder/buyer risk was appropriate because a buyer would demand a downward adjustment to the price to take account of the risk of purchasing an uncompleted house where construction had ceased for many months and where the house had been abandoned and previously vandalized. Consequently, the trial court confirmed the foreclosure sale, resulting in this appeal.

1. Jimmy Britt contends that SunTrust presented insufficient evidence of the true market value of the uncompleted house because the 15 percent discount for builder/buyer risk was "unsubstantiated and irrational."[3] As such, Jimmy Britt argues that the trial court should have accorded no weight to the expert's testimony and declined to confirm the foreclosure sale. We are unpersuaded.

It is true that "[a] trial court cannot confirm a foreclosure sale unless it is satisfied that the property so sold brought its true market value."[4] (Citation and punctuation omitted.) *Statesboro Blues Dev. v. Farmers &c. Bank*, 301 Ga. App. 851, 852 (690 SE2d 205) (2010). See OCGA § 44-14-161 (b). But

> [v]alue on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.

(Citation omitted.) *Greenwood Homes v. Regions Bank*, 302 Ga. App. 591, 592 (692 SE2d 42) (2010). The question is not whether this Court would have found Jimmy Britt or SunTrust's expert more

---

[3] Jimmy Britt did not move to exclude the testimony of SunTrust's expert; did not object at the confirmation hearing to the admissibility of the expert's testimony; and did not move to strike the expert's testimony regarding the valuation of the uncompleted house. As Jimmy Britt concedes, the only issue before this Court is the sufficiency of the valuation evidence.

[4] True market value is "the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so." (Punctuation and footnote omitted.) *REL and Assocs. v. Fed. Deposit Ins. Corp.*, 304 Ga. App. 33, 34 (1) (695 SE2d 370) (2010).

reliable or accurate in the first instance, "but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale." (Citation and punctuation omitted.) Id. at 596 (3). See *Mundy Mill Dev. v. ACR Property Svcs.*, 306 Ga. App. 730 (703 SE2d 137) (2010); *Blue Marlin Dev. v. Branch Banking &c. Co.*, 302 Ga. App. 120, 122 (1) (690 SE2d 252) (2010).

Although Jimmy Britt questions the means by which SunTrust's expert arrived at his opinion that the value of the uncompleted house should be discounted 15 percent for builder/buyer risk, the expert testified that his calculation was arrived at based on his consultation with two separate homebuilders. "It is axiomatic that an expert, in utilizing his expertise, may base his opinion as to value upon hearsay." *Hoover &c. Dev. Co. v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 855, 856 (2) (256 SE2d 140) (1979). See also *Boring v. State Bank &c. Co.*, 307 Ga. App. 93 (2) (704 SE2d 207) (2010). Moreover, it is also clear from the record that the expert arrived at his ultimate valuation after inspecting the uncompleted, vandalized home and assessing the condition of the surrounding subdivision. "An expert need not give reasons for an opinion. But, [where, as here,] the expert does give reasons, and it appears that the opinion is not based on sheer speculation, then this [C]ourt cannot second guess the methodology utilized to reach the opinion." (Citation and punctuation omitted.) *Statesboro Blues Dev.*, 301 Ga. App. at 853-854. See also *Boring*, 307 Ga. App. at 96 (2); *Peachtree Mtg. Corp. v. First Nat. Bank of Atlanta*, 143 Ga. App. 17, 19 (4) (237 SE2d 416) (1977).

Citing to *Mallett v. Fulford*, 142 Ga. App. 200, 201-202 (2) (235 SE2d 650) (1977), Jimmy Britt argues that the expert's decision to apply the 15 percent discount lacked "qualitative support" because the expert did not sufficiently explain how he arrived at that specific numerical percentage. Jimmy Britt, however, relies upon the division of *Mallet* addressing the valuation testimony of the property owner, who was "not qualified as an expert." *Mallett*, 142 Ga. App. at 201 (2). "An owner of property may not testify as to his opinion of the value of the property in a single or gross amount without giving his reasons therefor or else showing that he has had an opportunity for forming a correct opinion." (Citation and punctuation omitted.) Id. See *Washington v. Harrison*, 299 Ga. App. 335, 340 (2) (682 SE2d 679) (2009). This is because "to express a competent opinion as to the value of an item, a non-expert must show that he has sufficient information upon which to base such an opinion." (Citation and punctuation omitted.) *Waldrop v. State*, 231 Ga. App. 164, 165 (498 SE2d 337) (1998). In contrast, as previously noted, an expert witness is not required to explain the basis of his opinion, and we will not question the methodology utilized to reach the opinion unless based

upon sheer speculation. See *Boring*, 307 Ga. App. at 96 (2); *Statesboro Blues Dev.*, 301 Ga. App. at 853-854; *Peachtree Mtg. Corp.*, 143 Ga. App. at 19 (4). As such, *Mallett*, which applied the less deferential standard applicable to the valuation testimony of a lay witness, is inapposite.

Jimmy Britt further argues that the 15 percent discount was illogical because the expert had already incorporated the cost of completing the construction of the house into his appraisal. It is true that the expert included the labor, material, and permit costs associated with completing construction of the house in his valuation, and then incorporated an additional 15 percent discount for builder/buyer risk. But the expert testified that he included the additional discount into his calculations based upon his conversations with the two homebuilders, and he further testified that the uncompleted house was in a desolate, partially built subdivision and had been vandalized once before. This testimony supported the conclusion that there was a risk to stepping in to purchase the house in its condition, over and above the costs associated with the labor, materials, and permits needed for completing the construction. See *The Hudson Trio, LLC v. Buckhead Community Bank*, 304 Ga. App. 324, 328 (2) (696 SE2d 372) (2010) (trial court did not err in relying on appraiser's deduction of 13.5 percent for risk and profit, arrived at after appraiser "spoke to investors, developers, and brokers"); *Fayette Promenade v. Branch Banking &c. Co.*, 258 Ga. App. 323, 325-327 (574 SE2d 319) (2002) (trial court did not err in relying on appraiser's deduction of 15 percent for risk and profit). In any event, whether the valuation methodology of SunTrust's expert contained errors went to the weight and credibility of the expert's testimony, matters properly left to the trial court as the trier of fact. See *Chamblee Hotels v. Chesterfield Mtg. Investors*, 287 Ga. App. 342, 344 (651 SE2d 447) (2007).

Lastly, Jimmy Britt argues that the 15 percent discount for builder/buyer risk was illogical because it "presumes that the buyer of the property would be a developer" and "in the current economic market, the buyer likely would be the end user [who] would not be seeking to make a profit and thus would not carry such a risk." Jimmy Britt cites to no expert testimony or other evidence in the record to support his assertion that the buyer of an uncompleted house in a partially completed and desolate subdivision would likely be the "end user" (i.e., a private home buyer), and we have found none. Furthermore, attacks upon the underlying assumptions relied upon by an expert appraiser go to the weight and credibility of the testimony and are for the trial court to resolve. See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 181 (1) (622 SE2d 890) (2005).

For these combined reasons, and in light of our deferential standard of review, we conclude that the trial court was entitled to rely upon the valuation of the Property by SunTrust's expert, including the expert's utilization of a 15 percent discount for builder/buyer risk in valuing the uncompleted house. It follows that the trial court was authorized to find that SunTrust's winning bid at the foreclosure sale represented the true market value of the Property.

2. Jimmy Britt also maintains that the trial court applied an erroneous legal theory in confirming the foreclosure sale. Specifically, in its confirmation order, the trial court cited *Peachtree Mtg. Corp.*, 143 Ga. App. at 18 (4), for the proposition that "[u]nder Georgia law[,] the price brought at public sale, after proper and lawful advertisement, is prima facie market value of the property sold at a mortgage foreclosure sale, absent anything to indicate that there was chilling of the bid, fraud or the like." The trial court, however, did not expressly include the additional, qualifying language from *Peachtree Mtg. Corp.* that an applicant seeking confirmation of a foreclosure sale "may not rely solely on such a prima facie showing; he must introduce evidence showing the value of the property at the time of sale." Id. Because the trial court's order did not include this qualifying language, Jimmy Britt argues that the court proceeded under an erroneous legal theory in arriving at the true market value of the Property. We disagree.

The trial court is presumed to have followed the law, *Davis v. Bushnell*, 245 Ga. App. 221, 223 (537 SE2d 477) (2000), and the confirmation order, when read in its entirety, provides no basis for concluding that the trial court deviated from the law in this case. After citing to *Peachtree Mtg. Corp.*, the trial court went on to discuss the competing expert appraisal testimony of the parties and to explain why the court credited the valuation testimony of SunTrust's expert over that of Jimmy Britt's expert. As such, it is clear from the order that the trial court did not permit SunTrust to rely solely upon the price obtained at the foreclosure sale to prove true market value. Furthermore, read as a whole, the trial court's order shows that the court did not confirm the foreclosure sale based upon the theory that Jimmy Britt failed to rebut the prima facie establishment of true market value. Nor does the order reflect that the trial court shifted the burden to Jimmy Britt to prove true market value. Under these circumstances, Jimmy Britt has failed to demonstrate that the trial court applied an erroneous legal theory.

*Judgment affirmed. Blackwell and Dillard, JJ., concur fully and specially.*

YALE LAW LIBRARY

BLACKWELL, Judge, concurring fully and specially.

For the reasons set forth in my special concurrence in *Boring v. State Bank &c. Co.*, 307 Ga. App. 93 (704 SE2d 207) (2010), I concur fully in the majority opinion.

I am authorized to state that Judge Dillard joins in this special concurrence.

DECIDED JANUARY 27, 2011.

*Webb, Tanner, Powell, Mertz & Wilson, Benjamin A. Joffe*, for appellants.

*Busch, Slipakoff & Schuh, Mathew A. Schuh, Michael P. Bain*, for appellee.