PEOPLES BANK OF EAST TENNESSEE, Successor–in–Interest to Appalachian Community Bank, FSB, Plaintiff,

v.

Whitney HARP, Patricia Harp, Brent Baldasare, and Angela Baldasare, Defendants.

Civil Action No. 2:11–CV–00182–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

Feb. 12, 2013.

Melissa W. Jurgens, Thomas Edward Austin, Jr., Thomas E. Austin, Jr., LLC, Atlanta, GA, for Plaintiff.

Hayden R. Pace, Pace Law, P.C., Atlanta, GA, for Defendants.

## ORDER

WILLIAM C. O'KELLEY, Senior District Judge.

The court has before it for consideration Patricia Harp and Angela Baldasare's "Motion for Summary Judgment" [19] and defendants' "Amended Motion for Summary Judgment" [39].

## I. General Factual and Procedural Background

This lawsuit arose from the financial failure of a residential subdivision. On August 6, 2007, each defendant executed and delivered a personal guaranty to Appalachian Community Bank, FSB ("FSB"), which guaranteed the prompt payment of a note from Blue Ridge Georgia Capital Partners, LLC ("Borrower")[1] in the original principal amount of $5,588,898.55 (the "Note"). (*See* Compl. Exs. A–E, ECF Nos. 1–2, 1–3; Pl.'s Resp. to Defs.' First Statement of Material Facts ¶ 3, ECF No. 21–1.)[2] The Note was executed with the understanding that it would be used for the acquisition and development of certain real property comprising a subdivision (the "Property"). (Mem. Supp. Defs.' Mot. Summ. J. 3.) The Note was renewed on July 9, 2008, in the amount of $5,026,898.55. (Pl.'s Resp. to Defs.' First SMF ¶ 3.)

Ultimately, the subdivision development failed and the Property was foreclosed upon. However, the proceeds from the foreclosure sale failed to satisfy the remaining balance on the Note. (Mem. Supp. Defs.' Mot. Summ. J. 2.) On April 29, 2011, plaintiff (the successor-in-interest to FSB) filed a complaint in the Superior Court of Fannin County, Georgia, to collect the deficiency owed on the Note. (*See* Compl., ECF No. 1–1.)[3] On July 18, 2011, defendants removed the action to federal court pursuant to 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1.)

---

1. Borrower was a real estate development company made up of Avia Management, LLC ("Avia") and Mountain Tracks Developing and Building, LLC. (Mem. Supp. Defs.' Mot. Summ. J. Ex. A, ECF No. 19–1.) Defendants Whitney Harp and Brent Baldasare hold membership interests in Avia. (Defs.' First SMF ¶ 1, ECF No. 19–2.)

2. Hereinafter, "Statement of Material Facts" is abbreviated as "SMF."

3. This amount "allegedly includes a principal sum of $3,262,063.17, interest through June 6, 2012, of $2,214,364.62, late fees of $300.00, and $821,464.17 in attorney's fees." (Mem. Supp. Defs.' Mot. Summ. J. 2.) According to plaintiff, interest continues to accrue at a per diem rate of $1,449.81. (Compl. ¶ 13.)

On June 6, 2012, defendants Patricia Harp and Angela Baldasare (the "Wives") filed a motion for summary judgment. (Defs.' Mot. Summ. J., ECF No. 19.) On November 5, 2012, defendants filed a motion seeking leave to amend their answer in order to add an affirmative defense. (Mot. to Amend, ECF No. 30.) In the same motion, defendants sought to amend the Wives' original motion for summary judgment. (*Id.*) The proposed amended motion for summary judgment incorporated the original motion by reference and included a new ground for summary judgment in favor of *all* defendants. (*Id.* at Ex. 2.) On December 31, 2012, plaintiff requested an oral argument on these pending motions. (Mot. for Oral Arg., ECF No. 35.) The court granted this motion, and a hearing was held on January 17, 2013. At the hearing, the court granted defendants' motion for leave to file an amended answer and amended motion for summary judgment.[4] Soon thereafter, defendants filed these amended documents with the court. (*See* Defs.' Am. Mot. Summ. J., ECF No. 39; Am. Answer, ECF No. 41.)

## II. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

The moving party may demonstrate the absence of a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). In addition to the materials cited by the parties, the court may also refer to other materials in the record. FED.R.CIV.P. 56(c)(3). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation marks omitted).

This initial responsibility is discharged when the movant shows that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322, 106 S.Ct. 2548. Once the moving party has met this initial burden, the nonmoving party must "go beyond the pleadings" and, utilizing its own evidentiary submissions or those already filed, demonstrate that there is a genuine dispute of material fact such that a trial is required. *Id.* at 324, 106 S.Ct. 2548. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is appropriate. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quotation marks omitted). Thus, the moving party is entitled to "judgment as a matter

---

4. Defendants' motion to amend was unopposed.

of law" only when the nonmoving party fails to make a sufficient showing of an essential element of the case on which the nonmoving party bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. On the other hand, if the nonmovant "demonstrate[s] that there is indeed a material issue of fact ... [such that] the jury could reasonably find for that party," summary judgment must be denied. *Allen*, 121 F.3d at 646.

### III. Plaintiff's Alleged Failure to Comply with O.C.G.A. § 44–14–161

In their amended motion for summary judgment, defendants allege that plaintiff is statutorily precluded from seeking a deficiency judgment against them because plaintiff failed to comply with the confirmation procedures set forth in O.C.G.A. § 44–14–161. Although this argument was not raised in defendants' original motion for summary judgment, it potentially disposes of this entire action and therefore the court will address it first.

### A. Factual Summary

At the time the Note was made, the loan amount was larger than the legal limit FSB could lend on its own. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 2, ECF No. 31.) Accordingly, FSB presented the Note to Appalachian Community Bank in Ellijay, Georgia ("ACB"), to see if ACB would purchase part of the loan. (*Id.*) On July 9, 2008, FSB and ACB entered into a participation agreement, whereby ACB purchased 82.107 percent of the loan and FSB retained ownership of 17.893 percent and the responsibility for administering the loan. (*Id.* at 2–3, Ex. A.)

Although both FSB and ACB had the words "Appalachian Community Bank" in their titles, they were separate and distinct legal entities.[5] (Defs.' Am. Mot. Summ. J. 2–3; Quintrell Dep. 10:17–18.) FSB operated under the name of "Appalachian Community Bank, F.S.B.," while ACB operated under the name of "Appalachian Community Bank," "Appalachian Community Bank, Ellijay," or "Gilmer County Bank." (*Id.* at 32–160; Compl. Exs. A–E; Pl.'s Br. Resp. to Defs.' Am. Mot. Summ.

---

5. There was deposition testimony that FSB was "wholly owned" by ACB. (*See* Quintrell Dep. 10:7–13, May 12, 2012, ECF No. 28.) Despite this testimony, the court did not feel comfortable accepting this as fact because FSB continued to operate for nine months after ACB failed. (Defs.' Am. Mot. Summ. J. 32; Pl.'s Resp. to Defs.' Second SMF Ex. A.) If FSB was a wholly owned subsidiary of ACB, then it presumably would have been transferred to CSB when CSB purchased ACB's assets. When the court held a telephone conference to address this issue, among others, neither party could clarify this matter for the court.

However, in response to the court's inquiry, a supplemental statement of material facts was submitted after the telephone conference. This document revealed that FSB and ACB were both "wholly owned subsidiaries of a holding company with the legal name of Appalachian Bancshares, Inc." (Pl.'s Supp. Resp. to Defs.' Second SMF ¶ 1, ECF No. 44.)

ACB was incorporated in 2001 and was "known locally as Gilmer County Bank." (*Id.*) FSB was incorporated second in 2007. (*Id.*) While FSB's employees considered ACB to be the parent of FSB, "the relationship was actually that of a sister bank." (*Id.*)

The court takes this opportunity to note that resolving this motion has been hindered, rather than helped, by counsel's (and particularly plaintiff's counsel's) failure to properly research and confirm the facts underlying this action before submitting them to the court. As discussed *infra*, this issue arose solely because of the negligence of bank attorneys and/or employees. While the court recognizes counsel are not necessarily responsible for the negligent acts underlying this lawsuit, their own negligent failure to properly and thoroughly research the facts before presenting them to the court has wasted valuable judicial resources and exacerbated the overwhelming amount of negligence that has already occurred in this case.

J. Ex. A; Pl.'s Supp. Resp. to Defs.' Second SMF ¶ 1.) Unfortunately, FSB and ACB's employees and/or lawyers failed to appreciate the legal distinction between the two banks in the transactions precipitating this lawsuit.

While the Note and guaranties were executed in the name of FSB, the security deeds executed for the Property simply identified the grantee as "Appalachian Community Bank."[6] (See Mem. Supp. Defs.' Mot. Summ. J. Exs. C–D (guaranties identifying lender as "Appalachian Community Bank, FSB"); Defs.' Am. Mot. Summ. J. 169–84 (security deeds identifying the grantee simply as "Appalachian Community Bank").) According to plaintiff, the only way to determine which Appalachian Community Bank the security deeds designated as the grantee was by examining the address. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 3.)[7]

In addition to sharing ownership of the Note, FSB and ACB were both represented by the firm of Thompson, O'Brien, Kemp & Nasuti, P.C. ("TOKN"). (Id. at 4.) On October 6, 2009, TOKN conducted a foreclosure sale of the Property in the name of "Appalachian Community Bank." (Id.) Although the foreclosure notice failed to specify which Appalachian Community Bank was conducting the foreclosure sale, plaintiff contends and defendants do not dispute that it was conducted by FSB.

A petition for confirmation was then filed in the Superior Court of Fannin County, Georgia, with the petitioner simply identified as "Appalachian Community Bank" (the "Confirmation Action"). (Id. at Ex. D.) The Confirmation Action was significantly delayed by the serial bankruptcy filings of the Note's various guarantors. (Id. at 4.) While the Confirmation Action was pending, ACB went into receivership, and its assets were sold to Community &

---

6. An affidavit submitted with plaintiff's response attests that the failure to add "FSB" to the security deeds was a scrivener's error. (See Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. Ex. B.) This affidavit was executed by FSB's closing attorney, Angela Stewart Panter, and has been submitted to correct the identity of the grantee contained in the Fannin County Real Property Records. (Id.)

7. Plaintiff has repeatedly argued that the failure to properly name FSB in the security deeds was harmless because the parties could still determine which bank was designated as the grantee by the address. Upon reviewing the relevant documents, it came to the court's attention that these addresses actually varied from one document to the next. The address specified in the security deed was 2835 Scenic Drive, P.O. Box 2469, Blue Ridge, GA 30513, but the guaranties were executed in McCaysville, Georgia, and the address listed for the lender in the Note was 109 Blue Ridge Drive, P.O. Box 10, McCaysville, GA 30555. (Defs.' Am. Mot. Summ. J. 169–84; Mem. Supp. Defs.' Mot. Summ. J. Ex. B–D.) Deposition testimony submitted to the court further suggested that FSB had no office in Blue

Ridge, Georgia. (See Quintrell Dep. 10:2–6 ("The bank that I worked with, Peoples, acquired Appalachian Community Bank, FSB, which was a Federal charter that had a bank in McCaysville, Georgia, Ducktown, Tennessee, and then Murphy, North Carolina.").) When the court held a telephone conference to clarify this issue on February 6, 2013, plaintiff's counsel stated that she believed the Blue Ridge address and the McCaysville address reflected the locations of two different branches of FSB.

However, plaintiff submitted a supplemental statement of material facts the next day which clarified that the address listed in the security deed, 2835 Scenic Drive, P.O. Box 2469, Blue Ridge, GA 30513, was the location of a branch of ACB. (Pl.'s Supp. Resp. to Defs.' Second SMF ¶ 2.) Apparently, after FSB was incorporated, it "continued to use the pre-printed security deed forms of its sister organization," ACB. (Id.) ACB's address was mistakenly left on the security deed form when it was executed by FSB. Thus, even by examining the addresses as plaintiff argued, it would be impossible to tell which Appalachian Community Bank executed the security deed.

Southern Bank ("CSB"). (*Id.* at 4–5.) This created a conflict in TOKN's representation of FSB, and the firm of Thomas E. Austin, Jr., LLC ("Austin") was substituted as FSB's counsel. (*Id.* at 5.) Shortly before the substitution was finalized, TOKN filed a motion to substitute CSB as the "real party petitioner in interest" in the Confirmation Action, allegedly without F SB's knowledge or consent. (*Id.* at 5–6; Defs.' Am. Mot. Summ. J. 22–27.)[8] This motion was granted *nunc pro tunc* on June 17, 2010. (Defs.' Am. Mot. Summ. J. 20–21.)[9] Although CSB was now the real party petitioner, and CSB was represented by TOKN, Austin appeared as "legal counsel of record" for the petitioner in the Confirmation Action. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. Ex. E.) A few months later, FSB failed and was purchased by plaintiff. (Pl.'s Resp. to Defs.' Second SMF Ex. A, ECF No. 37–1.) To further complicate matters, the order that confirmed the foreclosure sale on March 3, 2011, was entered on behalf of "Appala-

chian Community Bank," not CSB. (Defs.' Am. Mot. Summ. J. 12–18.)[10]

In summary, the foreclosure sale was conducted by FSB but the confirmation proceedings were initiated in the general name of "Appalachian Community Bank," making it impossible to tell whether FSB or ACB was the party petitioning for confirmation. This ambiguity was then clarified, albeit erroneously, by the Superior Court's order designating CSB as the "real party petitioner in interest" *nunc pro tunc.* (*Id.* at 20.) The confirmation order was then entered on behalf of "Appalachian Community Bank," rather than CSB. However, because CSB had been designated the "real party petitioner in interest" *nunc pro tunc* by order of the court, it was CSB who received confirmation of the foreclosure sale.[11] Consequently, neither plaintiff nor its predecessor-in-interest obtained the confirmation order. In light of this fact, defendants now argue that plaintiff is statutorily precluded from obtaining a deficiency judgment against them under the Confirmation Statute. (*Id.* at 3–4.)

8. According to plaintiff, "counsel for [FSB]" did not become aware of the motion to substitute CSB "until receipt of Defendants' recent Motion for Summary Judgment." (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 5.)

9. *Nunc pro tunc* is Latin for "now for then." BLACK'S LAW DICTIONARY 712 (7th ed. 1999). "When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done on the specified date." 35A C.J.S. *Federal Civil Procedure* § 370, at 556 (1960).

10. This further illustrates the negligence of the employees and/or attorneys involved in this matter. Even if Austin was unaware of the substitution of CSB and still believed it was proceeding in the name of FSB, neither FSB nor ACB still existed when the confirmation order was entered by the Superior Court. Both failed and were sold by the FDIC in 2010. (*See* Pl.'s Resp. to Defs.' Second SMF Ex. A.) In light of this, Austin presumably should have moved to substitute plaintiff as the real party petitioner in the Confirmation

Action. If it had, it would have possibly discovered CSB's erroneous substitution and the Confirmation Action might have proceeded in the name of the correct party.

11. Plaintiff argues that "if the Confirmation Action was being conducted by [ACB], TOKN would have kept the file" rather than transferring it to FSB's new counsel. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 6.) However, this appears to conflict with plaintiff's earlier statement that "TOKN inadvertently proceeded [to conduct the confirmation proceedings] in the name of [ACB]." (*Id.* at 4.) Thus, it is unclear whether plaintiff contends that the Confirmation Action was originally filed by FSB or concedes that FSB was never a party to the confirmation proceedings. Regardless, because CSB was substituted as the "real party petitioner in interest" *nunc pro tunc,* the confirmation proceedings were initiated and the confirmation order was received by CSB.

### B. The Confirmation Statute

█ Under the Confirmation Statute,
[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

O.C.G.A. § 44–14–161(a). This statute "applies to both primary debtors and guarantors; an action for the balance remaining on a note following a foreclosure sale against a guarantor . . . is barred if no confirmation was obtained." *U.S. v. Yates*, 774 F.Supp. 1368, 1372 (M.D.Ga.1991) (citations omitted).[12]

█ "Only the 'person instituting the foreclosure proceedings' can seek confirmation of a sale." *Cheek v. Savannah Valley Prod. Credit Ass'n*, 244 Ga. 768, 262 S.E.2d 90, 92 (1979). The Georgia Court of Appeals has interpreted "the person instituting the foreclosure proceedings" to mean "the entity given the right to institute the proceedings under the terms of the instrument." *Darby & Assocs., Ltd. v. Fed. Deposit Ins. Corp.*, 141 Ga.App. 78, 232 S.E.2d 615, 617 (1977), *disapproved of on other grounds by Cartersville Developers, LLC v. Ga. Bank & Trust*, 292 Ga. App. 375, 664 S.E.2d 783 (2008). As the Confirmation Statute is in derogation of common law, it "requires strict construction." *Wachovia Bank, Nat. Ass'n v. ASF Enters., LLC*, No. 1:09–CV–03571–JOF, 2010 WL 2595012, at *6 (N.D.Ga. June 25, 2010) (Forrester, J.).

### C. Analysis

█ Here, the security deed listed simply "Appalachian Community Bank" as the grantee. This created an ambiguity in the terms of the instrument because it failed to identify which Appalachian Community Bank, ACB or FSB, was the grantee. However, the Note and guaranties were executed in the name of FSB and the security deed is being corrected by means of a scrivener's affidavit to reflect that FSB, not ACB, was the grantee. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 3.)[13] Accordingly, FSB was "the entity given the right to [foreclose] under the terms of the [security deed]," and it was FSB that exercised that right and "institut[ed] the foreclosure proceedings." *See Darby*, 232 S.E.2d at 617.[14] Accordingly, only FSB

---

12. This is a suit for a deficiency judgment. *See Archer Capital Fund, LP v. TKW Partners, LLC*, No. 1:08–CV–2747–TWT, 2009 WL 2356072, at *3 (N.D.Ga. July 27, 2009) (Thrash, Jr., J.) ("A party pursues a deficiency judgment when it seeks personal liability from the mortgagor for the outstanding balance of mortgage debt after the foreclosure fails to compensate for the full debt.") (citations omitted).

13. Georgia law permits the equitable reformation of a secured instrument in order to conform it to the intent of the parties. *See Selene RMOF REO Acquisition II, LLC v. Vandiver & Kaufman, LLC*, No. 3:10–CV–109, 2011 WL 1833204 (M.D.Ga. May 12, 2011) ("The reformation of a secured instrument to reflect the intention of the parties is permitted even after a foreclosure. . . .").

14. ACB could have been given the right to foreclose in its Participation Agreement with FSB, but the Participation Agreement specified that FSB "was to make the decisions regarding whether to foreclose on the underlying real property and whether to pursue any deficiency judgments that may arise from the foreclosure sale." (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 4.) Thus, ACB did not have the legal right to foreclose on the Property and was not the party legally entitled to obtain confirmation.

was entitled to "seek confirmation of [the] sale." *Cheek*, 262 S.E.2d at 92.

While the foreclosure sale was confirmed, it was not FSB but CSB (ACB's successor-in-interest) that instituted the confirmation proceedings and received the confirmation order. FSB, the "person instituting the foreclosure proceedings" within the meaning of the Confirmation Statute, did not receive the confirmation order. *See* O.C.G.A. § 44–14–161(a); *Darby*, 232 S.E.2d at 617. The court must decide whether this error statutorily bars plaintiff (as FSB's successor-in-interest) from seeking a deficiency judgment under the language of the Confirmation Statute. First, however, the court must address whether defendants are legally entitled to assert this defense.

## 1. Waiver

■ Plaintiff argues that defendants have waived their ability to assert this defense because they failed to appear at the confirmation hearing, object to ACB's authority to obtain confirmation, or appeal the confirmation order. According to plaintiff, this failure bars defendants from asserting any defenses they may have had regarding the "appropriateness of the party conducting the foreclosure sale." (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 8–9.) However, plaintiff cites to no authority for this proposition, and even if defendants had appeared at the confirmation hearing and contested ACB's authority to pursue confirmation, it is unlikely that the issue would have been resolved at that time.

■ The focus of a confirmation proceeding is limited to ensuring that "a non-judicial foreclosure sale was properly advertised and brought the fair market value of the land." *McCain v. Galloway*, 267 Ga.App. 505, 600 S.E.2d 449, 450 (2004). "Matters which do not address the questions of the true market value of the real property, or the procedural regularity of the foreclosure sale, are not within the scope of the confirmation proceeding." Frank S. Alexander, Georgia Real Estate Finance and Foreclosure Law, § 9:1 (2012–13 ed.). A confirmation proceeding "does not result in a personal judgment and it does not adjudicate the title of the property sold." *White Oak Homes, Inc. v. Cmty. Bank & Trust*, 314 Ga.App. 502, 724 S.E.2d 810, 812 (2012). "Except as to the confirmed amount of the sale, it does not establish the liability of any party with regards to the indebtedness." *Id.* "Issues of standing" or whether the person seeking confirmation is the "real party in interest" are not relevant to confirmation proceedings. *Id.* at 813. Therefore, whether ACB or CSB was the appropriate party to foreclose on the Property and pursue confirmation was not and could not have been put in issue during the Confirmation Action. Instead, these issues "must be raised either in a suit to enjoin the initial foreclosure or in a subsequent suit concerning a deficiency." Alexander at § 9:1. *See also Alexander v. Weems*, 157 Ga.App. 507, 277 S.E.2d 793, 794 (1981) ("Issues which go to the heart of the underlying obligation itself should be raised within the confines of a subsequent suit for a deficiency judgment."). Accordingly, defendants have not waived this defense and instead have properly raised it at this time.[15]

---

15. Plaintiff cites to a variety of cases to support the proposition that real party in interest issues are irrelevant to confirmation proceedings. However, these cases do not speak to whether these issues may be addressed in a subsequent suit for a deficiency judgment. *See Boring v. State Bank & Trust Co.*, 307 Ga.App. 93, 704 S.E.2d 207 (2010); *White Oak Homes*, 724 S.E.2d at 812. While such issues are inappropriate for confirmation proceedings, they are appropriate for suits for deficiency judgments. Alexander at § 9:1; *See also Alexander*, 277 S.E.2d at 794 ("Issues which go to the heart of the underlying obligation itself should be raised within the confines of a subsequent suit for a deficiency judgment.").

## 2. Collateral Attack

█ Plaintiff next argues that defendants are barred from disputing the validity of the confirmation order because such orders may not be collaterally attacked. To support this proposition, plaintiff cites *Weems v. McCloud*, 619 F.2d 1081 (5th Cir.1980).[16] In *Weems*, the Fifth Circuit explored the nature of a confirmation proceeding in order to determine whether a federal court would have subject-matter jurisdiction over it. In describing the confirmation process, the Fifth Circuit stated that confirmation orders "may be appealed and cannot be collaterally attacked." *Id.* at 1087. However, under the doctrine of *res judicata*, "a judgment ... is conclusive between the parties to the action and to their privies 'as to all matters put in issue or which might have been put in issue' in the action in which the judgment was rendered." *Dorsey v. Mancuso*, 249 Ga.App. 259, 547 S.E.2d 787, 789 (2001). If the matter was not put in issue or could not have been put in issue in the initial proceeding, it may be collaterally attacked.

█ The court finds plaintiff's arguments on this point to be without merit. First, plaintiff claims that defendants are attacking the validity of the confirmation order itself. This improperly characterizes defendants' arguments. Defendants do not dispute that the foreclosure sale was properly advertised or that it brought the fair market value of the Property. Instead, defendants argue that *plaintiff* never obtained a confirmation order as required by the Confirmation Statute and is therefore statutorily barred from seeking a deficiency judgment. Whether the confirmation order *received by CSB* is valid or invalid is irrelevant.

To the extent defendants' argument can be properly characterized as a collateral attack, that attack is limited to whether the confirmation order was received by the proper party. In *Dorsey*, the trial court held that the plaintiff was barred from suing to set aside the foreclosure sale by the doctrine of *res judicata* because her suit sought to relitigate matters already decided in the confirmation proceedings that confirmed the sale. 547 S.E.2d at 788. The Georgia Court of Appeals reversed. After discussing the limited scope of confirmation proceedings, the court concluded that "issues regarding [whether the security deed was properly executed] could not have been put in issue and determined in the confirmation proceeding." *Id.* at 789. Accordingly, plaintiff was not barred from collaterally attacking the confirmation order as to those issues. *Id.*

The court finds *Dorsey's* reasoning persuasive. Whether a party is the real party in interest or has standing to seek confirmation is beyond the scope of a confirmation proceeding. *See White Oak Homes*, 724 S.E.2d at 813 ("The issues of standing and assignment were irrelevant to the confirmation proceeding."). Accordingly, even if the court chose to characterize defendants' argument as a collateral attack on the confirmation order, that attack is not barred by the doctrine of res judicata because the basis for the attack, whether CSB was the proper party to seek confirmation, is not an issue that could have been determined during the confirmation proceeding. *Dorsey*, 547 S.E.2d at 789 ("[B]y law, a confirmation proceeding is limited to determining whether the sale was properly advertised and brought the fair market value of the land."). Having determined that defendants are entitled to

---

**16.** Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, constitute binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

assert this defense, the court returns to the main issue: whether the fact that CSB, rather than FSB, obtained the confirmation order now bars plaintiff from seeking a deficiency judgment against defendants.

### 3. The Identity of the Plaintiff

While the Confirmation Statute addresses the procedure by which a secured creditor may seek to have its foreclosure sale confirmed, it does not explicitly address proceedings to collect a deficiency judgment or who may bring these proceedings. Accordingly, plaintiff argues that as long as a debtor is afforded the protections set forth in the Confirmation Statute, the identify of the plaintiff in the suit for deficiency judgment is not the Confirmation Statute's concern. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 7–8.) This argument misses the point.

Under the Confirmation Statute, "no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall ... report the sale ... for confirmation and approval and shall obtain an order of confirmation and approval thereon." O.C.G.A. § 44–14–161. Since the Confirmation Statute's inception, Georgia courts have consistently acknowledged that it must be strictly construed. *See Titshaw v. Ne. Ga. Bank*, 304 Ga.App. 712, 697 S.E.2d 837, 839 (2010); *Peachtree Homes, Inc. v. Bank of Am., N.A.*, 315 Ga.App. 243, 726 S.E.2d 737, 738 (2012); *Tampa Inv. Grp., Inc. v. Branch Banking & Trust Co.*, 290 Ga. 724, 723 S.E.2d 674, 678 (2012); *Taylor v. Thompson*, 158 Ga.App. 671, 282 S.E.2d 157, 158 (1981). A strict construction requires the "person instituting the foreclosure proceedings" to be the same entity that reports the sale and obtains the confirmation order. *See Cheek*, 262 S.E.2d at 92 ("Only the 'person instituting the foreclosure proceedings' can seek confirmation of a sale."); *Titshaw*, 697 S.E.2d at 840 (noting under a strict construction of the statute,

assignees would be the improper party to pursue a confirmation order if they were assigned the underlying note after the foreclosure occurred). If they are not the same entity and there is no reason for the court to decline to strictly construe the statute, then "no action may be taken to obtain a deficiency judgment." O.C.G.A. § 44–14–161.

█ Here, the entity that instituted the foreclosure proceedings (FSB) was not the entity who reported the sale for confirmation or received the confirmation order (CSB). This fails to comply with the literal requirements of the Confirmation Statute. Accordingly, "no action may be taken to obtain a deficiency judgment" unless plaintiff falls under one of the limited exceptions recognized by Georgia courts. O.C.G.A. § 44–14–161. Unfortunately, it does not. Neither CSB nor ACB is plaintiff's (or FSB's) successor or assignee. *See Titshaw*, 697 S.E.2d at 840 (holding assignees may pursue confirmation); *Darby*, 232 S.E.2d at 617 (holding successors-in-interest through bankruptcy or death may pursue confirmation). FSB and ACB were separate and distinct legal entities. Thus, plaintiff is statutorily barred from pursuing a deficiency judgment against defendants.

Additionally, the court does not find this to be a situation where a strict construction of the Confirmation Statute is improper. In *Titshaw*, the court declined to strictly construe the Confirmation Statute because doing so would lead to an "absurd result": assignees of the underlying debt, who had received "all ancillary remedies and rights of action which the assignor had or would have had for the enforcement of the right or chose assigned" would be barred from being able to obtain confirmation of the foreclosure or a deficiency judgment. *Titshaw*, 697 S.E.2d at 840–41. Although ACB held an ownership interest in

the underlying debt, the Participation Agreement explicitly stated that the right to foreclose and pursue a deficiency judgment would remain with FSB. (Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. Ex. A ("Seller [ (FSB) ] may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof … Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security.").) FSB and ACB remained separate and distinct legal entities, and the court does not find a limited ownership interest in the underlying debt, especially when the owner has not received "all ancillary remedies and rights of action" arising from that debt, comparable to the interest held by a successor or assignee.

 Finally, the court recognizes that the law generally disfavors situations where an individual or entity owed a debt loses the right to collect it. *See, e.g., Titshaw,* 697 S.E.2d at 840–41. Failing to write the full, legal name of a party may seem like a small and technical mistake, but "a little neglect may breed great mischief." BENJAMIN FRANKLIN, THE WAY TO WEALTH (1758). Had FSB been properly named in the security deeds, foreclosure notice, or confirmation petition, CSB might not have been mistakenly substituted as the "real party petitioner in interest" by TOKN in the Confirmation Action. (Defs.' Am. Mot. Summ. J. 20.) Further, had FSB's attorneys reviewed the Superior Court's record after they were substituted as counsel in the Confirmation Action, they might have discovered the improper substitution of CSB and could have corrected it appropriately at that time. They failed to do so, the confirmation order was petitioned for and received by the wrong entity, and plaintiff is now statutorily barred

from pursuing a deficiency judgment against defendants.

**4. The Legislative Purpose Underlying The Confirmation Statute**

Finally, plaintiff suggests an additional ground for straying from a strict construction of the Confirmation Statute: the legislative purpose underlying the Confirmation Statute—protecting the debtor by requiring a judicial determination that the notice, advertisement, and regularity of the sale were proper and that the property was sold at a fair value—has been satisfied in this case. Therefore, plaintiff suggests that it should be permitted to pursue a deficiency judgment despite its failure to technically comply with the Confirmation Statute, especially since that failure is procedural rather than substantive. (*See* Pl.'s Br. Resp. to Defs.' Am. Mot. Summ. J. 7 ("The protections to the borrower mandated by the confirmation statute have been given. Therefore, an action to obtain a judgment for the deficiency may proceed.").)

While the court acknowledges plaintiff's argument, this is not the law. In Georgia, courts are required to strictly construe the language of the Confirmation Statute unless it "will result in unreasonable consequences or absurd results not contemplated by the legislature." *Titshaw,* 697 S.E.2d at 841. The court does not believe that it is either unreasonable or absurd to require lenders to strictly comply with the procedures set forth in the Confirmation Statute or face the consequences that result, especially when those consequences arise from the lender's own negligent conduct.

**III. Alleged Violation of the Equal Credit Opportunity Act**

In the original motion for summary judgment, the Wives allege that they are

entitled to summary judgment because their guaranties were "procured in contravention of public policy and [the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA")], thereby rendering them unenforceable." (Mem. Supp. Defs.' Mot. Summ. J. 3.) While the court generally prefers to address all arguments raised by the parties and provide a complete record in case of an appeal, defendants' ECOA argument raises questions of federal law that remain unsettled in the Eleventh Circuit. Rather than provide an unnecessary decision that would serve as important and binding precedent in an unsettled area of law, the court believes it more prudent to deny defendants' original motion for summary judgment as moot.

## IV. Conclusion

For the foregoing reasons, the court hereby **GRANTS** defendants' "Amended Motion for Summary Judgment" [39]. The Wives' "Motion for Summary Judgment" [19] is hereby **DENIED AS MOOT.** The Clerk is hereby **DIRECTED** to enter judgment for defendants.